**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ________________

PEACE OF MIND PHARMACEUTICALS LLC,

Plaintiff,

v.

DRUG ENFORCEMENT ADMINISTRATION,

Defendant.

---

# COMPLAINT

---

## I. PARTIES

1. Plaintiff Peace of Mind Pharmaceuticals LLC ("POM Pharma"), a Colorado limited liability company, is the wholly-owned disregarded entity for tax purposes through which its parent 501c3 tax-exempt charitable trust operates.

2. Defendant Drug Enforcement Administration is a federal agency within the United States Department of Justice ("DEA").

## II. INTRODUCTION

3. POM Pharma is a non-profit specialty pharmaceutical organization that seeks to import and distribute the pharmaceutical drug Pentobarbital in bulk active pharmaceutical ingredient ("API") form. Upon being imported, POM Pharma would distribute on a wholesale basis the Pentobarbital in bulk API form to designated compounding pharmacies, where the

Pentobarbital in bulk API form would be available to be compounded by the designated pharmacies upon receipt of, and pursuant to, a physician's prescription for a qualifying terminally ill patient in jurisdictions where the practice of medical aid in dying has been authorized.

4. Pentobarbital is a Schedule II controlled substance[1] under the Controlled Substances Act.[2]

5. Before POM Pharma may commence its plan of importation and distribution it is required, pursuant to the Controlled Substances Act, to first obtain DEA authorization.

6. POM Pharma has a current application pending with DEA for registration as an importer of Pentobarbital.[3]

## III. Nature of this Action

7. This case concerns POM Pharma's assertion that DEA is unreasonably delaying and frustrating POM Pharma's current application in violation of the Administrative Procedure Act[4] and the Fifth Amendment. This assertion is supported by a pattern of unreasonable delay and frustration by DEA toward POM Pharma and the practice of medical aid in dying that has been established over the past 6 years and 3 separate applications to import and distribute Pentobarbital. The effect of DEA's unreasonable delay and frustration is that POM Pharma is

[1] 21 CFR 1308.12(e).
[2] 21 U.S.C §§801 et seq.
[3] In addition to the DEA registration currently applied for, a subsequent DEA permit is also required under 21 CFR 1312.11 prior to commencing importation, but this permit may only be obtained following registration as an importer pursuant to 21 CFR 1301 et seq.; DEA registration as an importer includes the coincident right to distribute the imported drugs pursuant to 21 CFR 1301.13(e)(1).
[4] 5 U.S.C §§551 et seq.

unable to make available – on a non-profit basis – the safest, most reliable, and most effective pharmaceutical drug (which is currently unavailable) to qualifying terminally ill patients that elect to exercise the option of medical aid in dying. Absent judicial intervention, DEA will continue to unreasonably delay and frustrate POM Pharma's efforts.

8. For context, the practice of medical aid in dying is a states' rights issue and legal in the jurisdictions that have authorized the practice; controlled substances have been and are currently being used in the practice of medical aid in dying; the practice of medical aid in dying is used infrequently (approximately one-half of 1% of all deaths) and POM Pharma does not seek to materially expand the occurrence or use of the practice of medical aid in dying where currently authorized, but rather seeks to make available the drug of choice on a non-profit basis to the limited number of terminally ill patients that elect to exercise the option of medical aid in dying; the amount of Pentobarbital sought to be imported by POM Pharma is minimal, being less than 1% of the amount of Pentobarbital authorized by DEA annually; and the diversion risk is moderate as there is no known street value or recreational use of Pentobarbital.

## IV. JURISDICTION AND VENUE

9. This court has subject matter jurisdiction over this action under 28 USC §1331 as a case and controversy arising under the Constitution and laws of the United States.

10. POM Pharma is organized under the laws of, and resides in, the state of Colorado, POM Pharma's facility is located in Colorado, and POM Pharma's initial plan of importation and distribution is to occur within Colorado, and therefore venue is proper in the District of Colorado under 28 USC §§1391(b)(1), (2).

## V. BACKGROUND

The Practice of Medical Aid In Dying

11. The practice of medical aid in dying allows a terminally ill, mentally capable person with a life expectancy prognosis of 6 months or less to request, obtain, and – if his or her suffering becomes too unbearable – self-administer medication that shortens the dying process and brings about a peaceful death. The medication is typically self-administered by voluntarily drinking a glass of water containing the dissolved compound of medication. Please see Exhibit 1 for an overview of what medical aid in dying is, and as equally important, what medical aid in dying is not.

Terminology

12. Medical aid in dying, commonly referred to by the acronym MAID for short, goes by several different names: opponents often use the term "assisted suicide" and supporters may use the term "death with dignity." Arguably both "assisted suicide" and "death with dignity" carry with them their own respective biases, so the more neutral term of medical aid in dying or MAID will be used.

A States' Rights Issue

13. In Gonzales v. Oregon[5], the United States Supreme Court affirmed the well-established system of American federalism in which the legality of MAID is an issue that is to be determined by the states. The practice of MAID was first authorized in Oregon in 1997, and subsequently in Washington, Vermont, Montana, California, Colorado, D.C., Hawaii, New

[5] 546 U.S. 243 (2006)

Jersey, Maine, and New Mexico. Nearly 20 percent of the United States population now lives in a jurisdiction where the practice of MAID is authorized.[6]

Voluntary

14. It should go without saying, but out of an abundance of caution it is worth emphasizing: the practice of MAID is completely voluntary. Doctors, pharmacists – and of course terminally ill patients – who choose not to be involved or associated with the practice of MAID are free not to participate.

Medical Aid In Dying is NOT Euthanasia

15. It is important to distinguish the practice of MAID, which is *legal* in the jurisdictions that have authorized the practice, from euthanasia, which is *illegal* throughout the United States – as euthanasia and MAID are vastly different. *Euthanasia* allows *someone else* – not the dying person – to choose and act to cause death. In contrast, *MAID* enables the *dying person* to control the process from beginning to end.

Current Challenges of Medications Used in the Practice of MAID

16. The "drug of choice" can generally be defined as the safest, most reliable, and most effective pharmaceutical drug for a certain condition.

17. Short-acting barbiturates such as Pentobarbital and Secobarbital have historically been the "drug of choice" for the practice of MAID. However, over the past two decades the prices of these two main short-acting barbiturates have increased dramatically[7], making them

---

[6] Span, Paula. "Physician Aid in Dying Gains Acceptance in the U.S." *New York Times, January 16, 2017*. https://www.nytimes.com/2017/01/16/health/physician-aid-in-dying.html?module=inline

[7] Nelson, Roxanne RN, BSN. "When Dying Becomes Unaffordable." *Medscape, November 4, 2019*. https://www.medscape.com/viewarticle/888271

prohibitively expensive to most qualifying terminally ill patients – many of whom must pay out of pocket due to the absence of insurance coverage (e.g., the practice of MAID is not covered by Medicare) and often after their finances have been strained following expensive treatments and the inability to work. Within the past several years these two main short-acting barbiturates became unavailable – even to those with the financial means and willingness to purchase them.[8]

18. Short-acting barbiturates such as Pentobarbital and Secobarbital are not new pharmaceutical drugs (on information and belief, these drugs have been in existence since the 1930s), neither is subject to a current patent, and their synthesis or manufacture is not overly complex (relative to other pharmaceutical drugs). Combined with the onset of available alternatives, the present unavailability of Pentobarbital and Secobarbital for use in the practice of MAID is largely the unintended consequence of efforts by death penalty opponents to persuade suppliers of these drugs to eliminate their availability for use in executions.[9]

19. Compounding the foregoing cost and accessibility challenges for the medications used in the practice of MAID is that there are no pharmaceutical companies that presently make pharmaceutical drugs specifically for MAID, there is no consistent source of funding to research MAID pharmaceutical drugs, and financial assistance for those that cannot afford to purchase the prescription drugs used in MAID is limited at best.

---

[8] Aleccia, JoNoel. "Docs in Northwest Tweak Aid-In-Dying Drugs to Prevent Prolonged Deaths." *Kaiser Health News, February 21, 2017.* https://khn.org/news/docs-in-northwest-tweak-aid-in-dying-drugs-to-prevent-prolonged-deaths/

[9] https://www.cbsnews.com/news/meet-the-woman-behind-a-shortage-of-execution-drugs/; POM Pharma has protections in place to help ensure that its Pentobarbital is not used for anything other than the practice of MAID.

<u>POM Pharma's Charitable Purpose</u>

20. The charitable purpose of POM Pharma is to offer peace of mind to terminally ill patients by advancing the development of a drug of choice for MAID so as to enable the highest standard of care for the practice of MAID and to facilitate a source of MAID medication that is continually safe, reliable and accessible.

21. Matt Larson co-founded POM Pharma in 2017 after being diagnosed with Grade III brain cancer in 2015 at the age of 35. Matt was relieved in 2016 when the voters of his home-state of Colorado overwhelmingly approved by a nearly 2-to-1 margin a ballot initiative to authorize MAID, but simultaneously became acutely aware of the challenges associated with the pharmaceutical drugs used in the practice of MAID. Profoundly grateful that his brain scans continue to show no progression, Matt, aided by a group of experienced and talented advisers and together with the unexpected and gracious offers of expertise and advise from many others, started POM Pharma to try to remedy the challenges concerning the pharmaceutical drugs used in the practice of MAID.

22. It is important to emphasize that POM Pharma seeks to resolve the challenges concerning the pharmaceutical drugs used in the practice of MAID (i.e., please see Paragraphs 16, 17, 18 and 19, above), but POM Pharma <u>does not</u> seek to materially expand the occurrence or use of MAID where currently authorized. The practice of MAID is used infrequently – consisting of approximately one-half of one percent of all annual total deaths in Oregon where

MAID has been authorized the longest[10] – and POM Pharma believes that it should remain this way.

23. However, while most deaths occur peacefully, there are unfortunately instances where the dying process can be agonizing and in jurisdictions where the practice of MAID has been authorized a qualifying terminally ill patient has the freedom to decide for themselves – not the government – what is an acceptable level of suffering prior to their inevitable death. For the limited number of people that do choose to exercise the option of MAID, POM Pharma seeks to resolve the foregoing challenges concerning the pharmaceutical drugs used in the practice of MAID by making the drug of choice available and on a non-profit basis.

POM Pharma's DEA Applications

24. For over 6 years and across 3 separate applications, POM Pharma has attempted to obtain DEA authorization to import Pentobarbital. At one point the 3 separate applications were all pending simultaneously and in parallel with each other in a desperate attempt to address *perceived* concerns of DEA because the excessive delays and other problematic issues with DEA's formal written responses, together with DEA's repeated refusal to meet and engage, left POM Pharma with no choice but to try to guess what DEA's issues were and each of the additional applications were attempts to proactively respond to perceived issues or concerns of DEA.

A. 2017 Application: POM Pharma's first application was submitted in December 2017 ("2017 Application"). The 2017 Application contemplated POM Pharma relying on

[10] https://www.oregon.gov/oha/PH/PROVIDERPARTNERRESOURCES/EVALUATIONRESEARCH/DEATHWITHDIGNITYACT/Documents/year22.pdf

its third-party logistics provider to act as an agent of POM Pharma for both importation and distribution. A third-party logistics provider or 3PL is an organization that provides or coordinates warehousing or other logistic services of a product on behalf of an importer, manufacturer and/or wholesale distributor, but does not take ownership of a product and does not have the right to direct the sale or disposition of the product.[11] DEA's Miami Field Division conducted a field inspection on May 29, 2019 at POM Pharma's 3PL's facility in Boca Raton, Florida. The Diversion Program Manager[12] for DEA's Miami Field Division subsequently confirmed to POM Pharma in the summer of 2019 that no issues were identified at the May 2019 field inspection and approval of POM Pharma's application was recommended to DEA Headquarters. Notwithstanding, after years of DEA delays and inaction, POM Pharma voluntarily withdrew its 2017 Application in November of 2021 due to continued confusion within DEA about POM Pharma's ability to comply with the Controlled Substances Act by relying on its agent 3PL and to instead focus DEA's attention on POM Pharma's 2020 Application and 2021 Application where the issue of compliance through agency is not present.

B. <u>2020 Application</u>: In response to POM Pharma's perceived concern of DEA regarding its 2017 Application about the extent to which POM Pharma could rely on its agent 3PL to satisfy the requirements of the Controlled Substances Act, POM Pharma asked its 3PL in 2020 to request that DEA add Pentobarbital to the 3PL's

[11] See, for example, FDA's definition of a 3PL at 21 U.S.C. §360eee(22).
[12] On information and belief, the Diversion Program Manager is the most senior position within a local field office.

existing DEA importer registration (i.e., POM Pharma's 3PL was already a registered DEA importer and POM Pharma sought to have Pentobarbital added to the 3PL's registration; under this scenario, the 2020 Application differed from the 2017 Application in that POM Pharma's 3PL – and not POM Pharma – would be the registered importer, even though the 3PL would never take ownership of the Pentobarbital and POM Pharma would continue to direct the sale) ("2020 Application"). This 2020 Application was never acted upon by DEA and DEA even claimed no such application had been made approximately 18 months after POM Pharma's 3PL first made the request to have Pentobarbital added to its current importer registration, despite documentation and numerous correspondence with DEA during this period specifically concerning the 2020 Application. Irrespective, the 2020 Application became moot in January of 2022 after POM Pharma was notified by its 3PL that it was eliminating its logistics services for controlled substances and thereafter, on information and belief, ceased to be a DEA registered importer and distributor.[13]

C. <u>2021 Application</u>: In an effort to eliminate the 3PL altogether from POM's plan of importation[14], POM Pharma sought to import Pentobarbital itself to a small Denver facility that POM Pharma maintains. DEA's Rocky Mountain (Denver) Field Division conducted a field inspection of POM Pharma's Denver facility on June 23,

---

[13] POM Pharma subsequently learned that the C.E.O. of the 3PL had engaged in dishonest and illegal activity, completely unrelated to POM Pharma.

[14] POM Pharma emphasizes the distinction between "importation" and "distribution"; POM Pharma maintains the option following *importation* to (a) self-*distribute*; and/or (b) rely on a 3PL for *distribution.*

2021. The 2021 Application was published in the Federal Register on March 9, 2022 and no objections were made, but nearly two years following the publication the 2021 Application remains stalled.

25. For the reasons stated above, the 2021 Application is the only application that is currently pending with DEA, but the conduct of DEA for over 6 years and across the other two applications (i.e., 2017 Application and 2020 Application) is relevant because it establishes a pattern of unreasonable delay and frustration by DEA.

26. A better, more effective drug that is available on a non-profit basis for use by suffering terminally ill patients is a significant compelling public interest. However, POM Pharma does not seek any special treatment by DEA because of the foregoing compelling public interest – but rather the opposite: POM Pharma simply wants to be treated like any other applicant for registration as an importer of controlled substances and have the Controlled Substances Act applied to POM Pharma in a fair and timely manner.

POM Pharma's Current 2021 Application to Import Pentobarbital In Context – Small Amount of Pentobarbital, for a Small Number of Qualifying Terminally Ill Patients, Imported and Wholesale Distributed in Full Compliance with the Controlled Substances Act

27. Controlled substances have historically, and are currently, used in the practice of MAID and POM Pharma's efforts to import Pentobarbital for use in the practice of MAID is not a new or novel application of controlled substances.[15]

[15] Schedule II controlled substances Pentobarbital and Secobarbital were the drugs of choice and regularly used in the practice of MAID from around 1997 to around the mid-2010s when they initially became prohibitively expensive and then eventually unavailable. Morphine, also a Schedule II controlled substance (but unlike Pentobarbital, is a narcotic drug), is one of several ingredients in a common compound of medications that is currently used in the practice of

28. The amount of Pentobarbital sought for POM Pharma's initial plan of self-distribution within Colorado pursuant to its 2021 Application is approximately 3 kilograms, which is less than 1/100th of 1% of DEA's 2023 annual production quota for Pentobarbital.[16] Even if/when distribution is expanded over time to include the additional jurisdictions beyond Colorado where the practice of MAID is authorized, the amount of Pentobarbital sought is still relatively small – 40 kilograms, which is less than 1/8th of 1% of DEA's 2023 annual production quota for Pentobarbital.[17]

29. The 3 kilograms of Pentobarbital sought for POM Pharma's initial plan of self-distribution within Colorado is only capable of being compounded by a compounding pharmacy into approximately 300+/- individual prescriptions for qualifying terminally ill MAID patients. Even if/when distribution is expanded over time to include the additional jurisdictions beyond Colorado where the practice of MAID is authorized, 40 kilograms of Pentobarbital is only capable of being compounded by a compounding pharmacy into approximately 4,000+/- individual prescriptions for qualifying terminally ill MAID patients.

30. POM Pharma's Denver Facility meets the security requirements of the Controlled Substances Act (e.g., 21 CFR §§1301.71-76) and all the third parties within POM Pharma's plan of importation and distribution maintain DEA registrations or are exempt from registration.

---

MAID as an alternative to short-acting barbiturates, such as Pentobarbital, that are the drugs of choice but remain unavailable.

[16] See 2023 Established Aggregate Production Quotas for Schedule I and Schedule II Controlled Substances, Federal Register Vol. 87, No. 231, December 2, 2022, 74168; 3 kilograms / 33,843 kilograms = 0.000089% (i.e., less than 1/100th of 1%)

[17] See 2023 Established Aggregate Production Quotas for Schedule I and Schedule II Controlled Substances, Federal Register Vol. 87, No. 231, December 2, 2022, 74168; 40 kilograms / 33,843 kilograms = 0.12% (i.e., less than 1/8th of 1%)

31. POM Pharma takes seriously the security requirements of the Controlled Substances Act (e.g., 21 CFR §§1301.71-76). However, for context, Pentobarbital has no known significant recreational or street value and therefore, together with the minimal quantities being imported and distributed, the diversion risk is moderate – certainly relative to other controlled substances such as fentanyl, methamphetamine, cocaine, opioids, and heroin, that result in more than 100,000 U.S. deaths each year.[18]

## VI. PATTERN OF DEA'S UNREASONABLE DELAY AND FRUSTRATION

32. The following are examples of DEA's pattern of unreasonable delay and frustration of POM Pharma's applications that concern the practice of MAID, established over 6 years and across 3 separate applications.

33. For over 6 years and across 3 separate applications, POM Pharma has had various interactions with DEA's Rocky Mountain (Denver) Field Division and DEA's Miami Field Division. However, following the initial site inspections conducted by the respective field offices, the applications are referred to DEA Headquarters and, on information and belief, a substantial portion, if not all, of the asserted problematic conduct is originating from or being directed by DEA Headquarters.

34. **DEA's False Assertion of an Adequate Domestic Supply: DEA has tried, and continues to try today, to use the false assertion of an adequate domestic supply as an inappropriate excuse to deny POM Pharma's applications to import Pentobarbital for use in MAID – *despite* approving at least two other Pentobarbital import applications for use in**

---

[18] https://www.cdc.gov/nchs/data/databriefs/db457-tables.pdf#4

**capital punishment on the very same basis sought by POM Pharma and during the same general time period.**

A. In general, the Controlled Substances Act provides a preference for domestic manufacturers of controlled substances and only if/when the domestic supply of a particular controlled substance is not adequate may an importer then obtain DEA registration to import the respective controlled substance.

B. Please see Exhibit 2 for a more detailed explanation by DEA, in its own words, describing to members of the United States Congress the standards that DEA uses to assess an importation application for a controlled substance such as Pentobarbital.

C. POM Pharma has sought, and continues to seek, to import Pentobarbital on the basis that no domestic manufacturers are willing and/or able to supply Pentobarbital to POM Pharma in the required quantities and for the intended use in the practice of MAID. Specifically:

i. In 2018, and again in 2019 and 2021, to demonstrate that no domestic manufacturers are willing and/or able to supply Pentobarbital to POM Pharma in the required quantities and for the intended use in the practice of MAID, POM Pharma (or its agent 3PL) contacted all the currently registered domestic manufacturers and provided their denials and/or non-responses to DEA in memos dated May 18, 2018, July 31, 2019 (updated October 10, 2019), and by email dated March 1, 2021.

ii. Additionally, on multiple occasions, POM Pharma explained why the registration of one or more additional domestic manufacturers of Pentobarbital

would not meet the needs of MAID patients in the authorized jurisdictions, stating in a memo sent by POM Pharma to DEA on July 9, 2019:

> *"…the current annual MAID usage requirements of between 25 to 40 kilograms are too large to be met by manufacturers of reference standards but too small to be economical for commercial production (the current annual usage requirements of MAID constitute less than 1/6th of 1% of the annual production quota for Pentobarbital Sodium).[FN 2[19]] Putting aside the astronomical retail cost/dose that would be required to justify commercial production at the current scale, the time to develop a route of synthesis (ROS) and obtain stability data would be several years at minimum."*

iii. Moreover, in the same memo sent by POM Pharma to DEA on July 9, 2019, POM Pharma emphasized the checks-and-balances function of the Controlled Substances Act's requirement that importation applications are published in the Federal Register with an opportunity for registered manufacturers (and manufacturing applicants thereof) to object:

> *"The notice and opportunity to object and/or request a hearing pursuant to 21 CFR 1301.34(a) functions as a checks-and-balances to protect the interests of existing and potential domestic manufacturers of Pentobarbital Sodium; if an existing or potential domestic manufacturer wants to supply P.O.M. Pharma on competitive terms (after taking into consideration the CSA compliance costs), this is their opportunity to say so…"*

D. Notwithstanding, DEA has tried, and continues to try today, to use the false assertion of an adequate domestic supply as an inappropriate excuse to deny POM Pharma's applications to import Pentobarbital for use in MAID – despite approving at least two

[19] See https://www.deadiversion.usdoj.gov/fed_regs/quotas/2017/fr1108.htm; 40 kilograms / 25,850 kilograms = 0.15% (i.e., less than 1/6th of 1%)

other Pentobarbital import applications for use in capital punishment on the very same basis sought by POM Pharma and during the same general time period.

E. 2018 Instance of DEA's False Assertion of an Adequate Domestic Supply:

i. An August 8, 2018 email from Rocky Mountain (Denver) Diversion Investigator Oesterle relayed to POM Pharma the position of DEA Headquarters that POM Pharma's 2017 Application would not be approved, stating in part (please see Exhibit 3):

> "*I have received notification from DEA Headquarters and it was determined that there is an* ***adequate supply of Pentobarbital domestically****,* ***therefore*** *this new application to import Pentobarbital* ***will not be approved****.*" (emphasis added)

ii. The false assertion by DEA Headquarters of an adequate domestic supply of Pentobarbital as justification for not approving POM Pharma's 2017 Application raises concerns because approximately *three months prior* POM Pharma had submitted – at the request of DEA Headquarters – a memo with denials from all of the registered domestic manufacturers of Pentobarbital demonstrating that no domestic manufacturers were willing and/or able to supply Pentobarbital to POM Pharma in the required quantities and for the intended use in the practice of MAID. Please see Exhibit 4.

F. 2019 Instance of DEA's False Assertion of an Adequate Domestic Supply:

i. In a July 9, 2019 email to POM Pharma from DEA Headquarters, the focus of an upcoming DEA Headquarters meeting concerning POM Pharma's 2017 Application was described as follows (please see Exhibit 5):

> "*The discussion will revolve around whether pentobarbital should be allowed to be imported into the United States when a sufficient domestic supply already exists but domestic suppliers will not sell the product… **As you may suspect, DEA attorneys will take some time to consider all the facts and do some research before providing a final position.***" (emphasis added)

ii. The foregoing email on July 9, 2019 from DEA Headquarters makes it sound like the situation in which *"…a sufficient domestic supply already exists but domestic suppliers will not sell the product"* was a novel issue of first impression that required extensive research and consideration by DEA before arriving at a "*…final position*."

iii. Yet, just *five months prior* DEA had approved an application for registration to import Pentobarbital by the Arizona Department of Corrections on the exact same basis sought by POM Pharma – i.e., that no domestic manufacturers are willing and/or able to supply Pentobarbital in the required quantities and for the intended legitimate use. Specifically, a *notice of application* by the Arizona Department of Corrections for the importation of Pentobarbital was published in the December 14, 2018 edition of the Federal Register, the stated basis being:[20]

> Pentobarbital "*… is not available for the intended legitimate use within the current domestic supply of the United States*."

iv. On information and belief, the Arizona Department of Corrections has been approved at least 8 times between 2012 to 2023 to import Pentobarbital on the basis that no domestic manufacturers are willing and/or able to supply

[20] A notice of approval of the application by the Arizona Department of Corrections was subsequently published in the February 21, 2019 edition of the Federal Register.

Pentobarbital in the required quantities and for the intended legitimate use (i.e., the same basis that POM Pharma seeks to import Pentobarbital).

v. Moreover, despite DEA Headquarters never informing POM Pharma of its "*final position*" and delaying any subsequent formal communication for over 11 months (please see Paragraph 37.B.ii, below), a mere *21 days after* the July 9, 2019 email to POM Pharma from DEA Headquarters stating "*…[a]s you may suspect, DEA attorneys will take some time to consider all the facts and do some research before providing a final position…*", a notice of application (which was subsequently approved) by the Southern Ohio Correctional Facility for the importation of Pentobarbital was published in the Federal Register on July 30, 2019 with the same basis of importation sought by POM Pharma – stating the basis of the Southern Ohio Correction Facility as:

> Pentobarbital "*… is not available for the intended legitimate use within the current domestic supply of the United States.*"

vi. The intended use of Pentobarbital by the Arizona Department of Corrections and the Southern Ohio Correction Facility is for capital punishment, and not the practice of MAID – but this distinction is not relevant for purposes of assessing (a) whether DEA had previously addressed the issue of "*…whether pentobarbital should be allowed to be imported into the United States when a sufficient domestic supply already exists but domestic suppliers will not sell the product…*" and reached a "*final position*"; and (b) whether DEA's standard is being applied uniformly.

a. DEA had previously addressed and determined a final position, as evidenced by at least 4 approvals of the Arizona Department of Corrections' application for the importation of Pentobarbital ***prior*** to 2019.

b. DEA is not applying the standard uniformly, as evidenced by the prior and subsequent approved applications of importation of Pentobarbital for use in capital punishment by the Arizona Department of Corrections and the Southern Ohio Correction Facility, but not POM Pharma's application for the practice of MAID – despite all the applications for importation being on the same basis.

vii. The number of DEA registered importers for all controlled substances each year is not so significant that DEA Headquarters is likely to have merely overlooked the previously adopted position for the situation in which there is a domestic supply but the manufacturers are unable/unwilling to sell to the applicant, and the different treatment between the capital punishment applications and POM Pharma's MAID application. For context, in 2020, 2021 and 2022 there were 33, 66, and 75 DEA registered importers, respectively, *across all types of controlled substances* (i.e., total registered importers of all controlled substances).[21]

viii. Moreover, POM Pharma brought the inconsistent treatment to the attention of DEA on at least two occasions (i.e., in an August 19, 2019 email and again in an October 14, 2019 memo), stating in POM Pharma's October 14, 2019 memo to DEA:

[21] See https://www.deadiversion.usdoj.gov/drugreg/nor/importers/importers.html

> "*POM Pharma respectfully requests to be treated no different than the other 7 (at least) applications that have been published in the Federal Register and approved to import Pentobarbital Sodium. Of the 7 registered importers of Pentobarbital Sodium, the most relevant appears to be the Arizona Department of Corrections. Specifically, on 12/14/2018 a notice of application by the Arizona Department of Corrections was published in the Federal Register… where it was noted that: 'This particular controlled substance is not available for the intended legitimate use within the current domestic supply of the United States.' Subsequently, on 2/21/2019 a notice was published in the Federal Register that the Arizona Department of Corrections had been granted registration…*"

G. <u>2023 Instance of DEA's False Assertion of an Adequate Domestic Supply</u>: Despite POM Pharma's repeated demonstrations that no domestic manufacturer is able/willing to sell Pentobarbital to POM Pharma in the required quantities and for the intended legitimate use in the practice of MAID – and even after the 2021 Application was published in the Federal Register and no objections were received from domestic manufacturers (or anyone else) – DEA continues to raise the false assertion of an adequate domestic supply, most recently in DEA's memo to POM Pharma dated August 31, 2023 – which stated:

> "*Please explain why you [POM Pharma] are seeking to import controlled substances instead of obtaining them from a domestic manufacturer…*" (annotation added)

H. All the while, other applications for the importation of Pentobarbital on the basis that no domestic manufacturers are willing and/or able to supply Pentobarbital in the required quantities and for the intended legitimate use continue to be granted registration (i.e., the same basis sought by POM Pharma) – most recently the Arizona Department of Corrections' application was noticed in the Federal Register on June 7, 2023 and registration was granted 4 months later on September 25, 2023.

35. **DEA Telling POM Pharma One Thing, then Telling the United States Congress Another: DEA is frustrating POM Pharma's efforts to obtain review by the United States Congress of DEA's treatment of POM Pharma and its import applications of Pentobarbital for use in the practice of MAID by making inconsistent assertions to POM Pharma and the United States Congress.**

A. DEA's Inconsistent Assertion of Price as a Factor in Assessing the Adequacy of the Domestic Supply: DEA Headquarters asserted to POM Pharma on multiple occasions that *price is not a relevant consideration* in assessing the adequacy of the domestic supply, but then approximately seven months later told members of the United States Congress that *price is a permissible factor* *(without correcting DEA's prior incorrect assertion to POM Pharma)*.

i. At one point in 2019 a domestic manufacturer indicated a potential willingness to supply POM Pharma with Pentobarbital, but at a *price more than 1,764-times* the price of Pentobarbital available to POM Pharma from its foreign supplier.[22]

ii. Recall, the Controlled Substances Act provides a preference for domestic manufacturers of controlled substances and only if/when the domestic supply of a particular controlled substance is not adequate may an importer then obtain DEA registration to import the respective controlled substance. Please see Paragraph 34.A, above.

[22] This domestic manufacturer subsequently refused to speak with POM Pharma and, on information and belief, is no longer a registered manufacturer of Pentobarbital.

iii. In assessing the adequacy of a controlled substance within the domestic market, 21 CFR 1301.34(d)(3) - Application for Importation of Schedule I and II Substances, provides that "*… the [DEA] Administrator* ***shall*** ***consider … prices*** *at which the applicant is committed to undertake to provide such products in the domestic market…*" (emphasis added).

iv. POM Pharma emphasized the aforementioned regulation to DEA on multiple occasions, including in a memo dated July 31, 2019 and in an email sent on August 19, 2019.

v. Notwithstanding, in an October 8, 2019 email from DEA Headquarters, DEA Headquarters informed the local field office (please see Exhibit 6):

> *"Diversion Control (DC) had a meeting with Chief Counsel (CC) today to discuss how to move forward with POM's pending Importer Registration… CC concurs with DC that price of a drug does not fall under USC 823, therefore, can not* [sic] *be used as a justification to import if there is adequate domestic supply."*

vi. In a subsequent letter from members of the United States Congress dated November 21, 2019 to the Acting Administrator of DEA, DEA was specifically asked by members the United States Congress (please see Exhibit 7):

> *"To what extent does cost or availability of the medicine factor into the approval of an application [by DEA under the Controlled Substances Act]?"*

vii. In contradiction to DEA Headquarters' assertion to POM Pharma that price is not a permissible factor (and without ever communicating to POM Pharma that DEA Headquarters' prior position was inaccurate), DEA Headquarters told members of the United States Congress that price was a permissible factor in a

DEA Headquarters reply letter dated May 5, 2020 – DEA Headquarters stating (please see Exhibit 2):

> *"If the applicant seeks approval of the importation on the ground that competition among domestic manufacturers is inadequate* [i.e., that no domestic manufacture is willing/able to sell the controlled substance in the required quantities and for the intended legitimate use], *the applicant must make the requisite showing under* ***21 C.F.R. 1301.34(d)-I, for which cost and availability of the substance and potential substitutes are factors."*** (annotation and emphasis added)

B. DEA's Inconsistent Assertion that No Applications Are Pending for the Importation of Pentobarbital: DEA Headquarters told members of the United States Congress that no applications were currently pending for the importation of Pentobarbital *despite* telling POM Pharma – coincidentally on the very same day – that POM Pharma's application for the importation of Pentobarbital was still pending.

i. Members of the United States Congress had repeatedly been in contact with the Congressional Affairs Section of DEA on behalf of POM Pharma, and the Congressional Affairs Section of DEA was well aware of POM Pharma's efforts to import Pentobarbital for the practice of MAID. For example, in an October 25, 2019 email sent from the Section Chief of the Congressional Affairs Section of DEA to a staffer of a member of the United States Congress, the Section Chief states:

> *"The program office has been working with Mr. Larson* [an officer of POM Pharma] *for quite some time on this ongoing matter, and they continue to engage with him. Please let me know if you need additional information."* (annotation added)

ii. Notwithstanding, in a subsequent letter dated May 5, 2020 (i.e., *less than 7 months later*) from the Section Chief of the Congressional Affairs Section of

DEA to members of the United States Congress, DEA told members of the United States Congress that there were no applications pending for the importation of Pentobarbital (please see Exhibit 2):

> "*No Pending Registration Application for registration as a Pentobarbital or Secobarbital Importer*"

iii. In a letter to POM Pharma also dated May 5, 2020 (i.e., coincidentally the very same day as the DEA letter to members of Congress), DEA stated to POM Pharma that its 2017 Application for the importation of Pentobarbital "*…remains pending*." On information and belief, this letter was written by, or at the direction of, DEA Headquarters despite being sent by DEA's Miami Field Division.

iv. POM Pharma notified DEA of its incorrect assertion to members of the United States Congress in an email sent to DEA on July 23, 2020.

v. On information and belief, DEA has never corrected this error with members of the United States Congress after POM Pharma brought the error to the attention of DEA.

36. **DEA Falsely and Dishonestly Claimed an Application Did Not Exist as the Reason for Inaction: DEA falsely and dishonestly claimed that it had no record of the 2020 Application to import Pentobarbital – *despite* multiple documented communications with both the local DEA and DEA Headquarters proving that the request was submitted and that DEA was aware of the 2020 Application.**

A. Recall, the 2020 Application was a request by POM Pharma's 3PL to have Pentobarbital added to the 3PL's existing importer registration so that POM Pharma's

3PL could import Pentobarbital on behalf of its client POM Pharma. Please see Paragraph 24.B, above.

B. On numerous occasions, both POM Pharma and its 3PL had communications specifically concerning the 2020 Application with both DEA Headquarters and the local DEA Miami Field Division. Specifically:

i. 6/9/2020 - POM Pharma's 3PL sent to DEA Headquarters via email on June 9, 2020 a completed DEA Importer Questionnaire for the importation of Pentobarbital on behalf of its client POM Pharma. Please see Exhibit 8.

ii. 6/12/2020 - Three days later on June 12, 2020, POM Pharma forwarded to the local DEA the completed DEA Importer Questionnaire. Please see Exhibit 9.

iii. 10/20/2020 – The Group Supervisor for the local DEA Miami Field Division responded by email on October 20, 2020 to acknowledge receipt of an email sent by POM Pharma the prior day in which the 2020 Application is specifically addressed and references a prior conversation in which the 2020 Application was specifically discussed. Please see Exhibit 10.

iv. 1/7/2021 & 1/8/2021 - POM Pharma sent an email on January 7, 2021 to DEA Headquarters specifically concerning the 2020 Application and requesting that DEA Headquarters allow POM Pharma's 3PL to rely on the two prior instances of POM Pharma receiving denials from domestic manufacturers of Pentobarbital based on the logic that a 3PL is precluded from taking ownership of a pharmaceutical drug – so these domestic manufacturers would still be selling the Pentobarbital to POM Pharma under the 2020 Application, even though the

Pentobarbital would be sent to the 3PL. DEA Headquarters acknowledged POM Pharma's email in a reply on January 8, 2021. Please see Exhibit 11.

v. 1/12/2021 - POM Pharma sent an email on January 12, 2021 to both DEA Headquarters and the local DEA office specifically concerning the 2020 Application, and again requested that DEA not require POM Pharma's 3PL to duplicate POM Pharma's prior two efforts demonstrating that no domestic manufacturer is willing/able to supply Pentobarbital in the required quantities and for the intended use of the practice of MAID. Please see Exhibit 12.

vi. 1/15/2021 - DEA replied to POM Pharma's January 12, 2021 request 3 days later on January 15, 2021, requesting that POM Pharma again provide the prior two instances of denials. POM Pharma provided the requested information that same day and DEA confirmed receipt the following week. Please see Exhibit 13.

vii. 1/20/2021 – POM Pharma's 3PL sent DEA a letter dated January 20, 2021 authorizing DEA to continue to have discussions with POM Pharma concerning the 2020 Application in response to DEA Headquarters' assertions that even though the 2020 Application was being made on POM Pharma's behalf by POM Pharma's 3PL, it was not POM Pharma's application and therefore DEA could only discuss it with the 3PL and not POM Pharma. Please see Exhibit 14.

viii. 3/1/2021 - On March 1, 2021, POM Pharma's 3PL sent to both DEA Headquarters and the local DEA field office confirmation that no domestic manufacturers had replied to the 3PL's inquiry to supply POM Pharma with

Pentobarbital in the required amounts and for the intended legitimate use of MAID. Please see Exhibit 15.

ix. 3/12/2021 - On March 12, 2021, POM Pharma forwarded the March 1, 2021 email of POM Pharma's 3PL to both DEA Headquarters and the local DEA field office. Please see Exhibit 16.

x. 3/15/2021 - On March 15, 2021, POM Pharma sent DEA Headquarters notification that it had submitted a third application (i.e., the 2021 Application; see Paragraph 24.C, above), and included in both the email and as an attachment were summaries of POM Pharma's 3 pending applications – including the 2020 Application made by POM Pharma's 3PL on behalf of POM Pharma. Please see Exhibit 17.

xi. 4/2/2021 - On April 2, 2021, POM Pharma sent DEA Headquarters an email asking for an update regarding the 2020 Application. Please see Exhibit 18. DEA did not respond to POM Pharma's request for an update.

xii. 4/5/2021 – Having received no reply to POM Pharma's request for an update sent on April 2, 2021, on April 5, 2021 POM Pharma sent an email to both the local DEA field office and DEA Headquarters (including the Deputy Assistant Administrator who signed the December 21, 2021 letter to POM Pharma claiming that there is no record of the 2020 Application; please see Paragraph 36.C, below). Included in both the email and as an attachment were summaries of POM Pharma's 3 pending applications – including the 2020 Application made by POM Pharma's 3PL on behalf of POM Pharma. Please see Exhibit 19.

xiii. 5/5/2021 - Having not received a reply to its prior April 5, 2021 request for an update, on May 5, 2021 POM Pharma again sent an email to both the local DEA field office and DEA Headquarters (including the Deputy Assistant Administrator who signed the December 21, 2021 letter to POM Pharma claiming that there is no record of the 2020 Application; please see Paragraph 36.C, below). Included in both the email and as an attachment were summaries of POM Pharma's 3 pending applications – including the 2020 Application made by POM Pharma's 3PL on behalf of POM Pharma. Please see Exhibit 20.

xiv. 11/12/2021 - In a letter dated November 12, 2021 from POM Pharma's counsel sent to DEA, the 2020 Application is specifically referenced and requests action or notification of any outstanding items. Please see Exhibit 21.

xv. 11/29/2021 - In a letter dated November 29, 2021 from POM Pharma to the DEA Administrator, the 2020 Application is specifically referenced and requests action or notification of any outstanding items. Please see Exhibit 22.

C. Notwithstanding the foregoing 15 documented communications, in a DEA letter dated December 21, 2021 to POM Pharma, DEA Headquarters claimed to have no record of the 2020 Application – DEA Headquarters stating in regard to the 2020 Application (please see Exhibit 23):

> *"DEA records indicate that Woodfield Distribution, LLC.* [POM Pharma's 3PL] *in Florida (DEA registration number RW0413548) has neither submitted an application or request to add the drug code pentobarbital (drug code 2270) to their existing importer registration. As such, we are unable to provide information in reference to such application or request."*

D. POM Pharma responded by email on the same day to DEA's December 21, 2021 letter that incorrectly asserted that DEA had no record of the 2020 Application with documentation proving that the 2020 Application had been made and that DEA was aware of the 2020 Application. In that same email, POM Pharma requested DEA Headquarters please confirm receipt and that no further support/documentation was required to correct the error. Please see Exhibit 24. DEA never confirmed receipt as requested, nor acknowledged the error.

37. **For over 6 years and across 3 applications, DEA has (A) refused to meet and engage substantively, and instead has insisted on formal written communications - but then sends formal written communications that are (B) excessively delayed, (C) request previously provided information, (D) resurrect previously addressed issues, and (E) willfully disregard DEA's own Controlled Substances Act and/or the basics of importation and distribution of controlled substances.** Select examples have been provided below, but additional examples are available. While some of the examples may seem trivial in isolation, when taken as a whole they constitute a pattern of problematic conduct of DEA that has unreasonably delayed and frustrated POM Pharma's ongoing efforts to import and distribute Pentobarbital for use in the practice of MAID.

A. Refusal to Meet and Engage Substantively, and Instead an Insistence on Formal Written Communications:

i. Despite countless requests and pleas from POM Pharma, DEA has repeatedly refused to meet – whether in person, by phone, or virtually – and engage with POM Pharma in a substantive dialogue that would presumably allow the parties

to better understand each other's concerns and attempt to efficiently resolve any outstanding issues, misunderstandings, errors, or deficiencies. On the one occasion in January 2023 where DEA did agree to meet with POM Pharma and POM Pharma's D.C.-based counsel, DEA made clear that it was there to primarily listen and did not engage in substantive dialogue – stating in advance of the January 18, 2023 meeting in an email sent by DEA Headquarters on January 3, 2023:

> *"…while we continue to have some outstanding questions regarding POMs's proposed activities, we will likely not be in a position to discuss/resolve those issues during a proposed meeting and will instead be requesting that info in writing from POM."*

ii. DEA has and continues to require that communications concerning the substantive merits of POM Pharma's applications occur in the form of formal written exchanges. POM Pharma appreciates and agrees with the need for a written record. However, excessively delayed formal written responses and an ongoing refusal to meet and engage substantively – compounded by the additional issues described in Paragraphs 37.C, D & E (see below) – further unreasonably delay and frustrate POM Pharma's efforts to import and distribute Pentobarbital.

B. <u>Examples of Excessively Delayed Formal Written Communications</u>:

i. While most of DEA's formal written communications are signed and sent by the local DEA field offices, on information belief DEA Headquarters is actually writing and/or directing the substance of these communications.

ii. Nearly 1 Year Delay (5/29/19 to 5/20/20): There was a delay of over 11 months concerning POM Pharma's 2017 Application following the site inspection of POM Pharma's 3PL's facility in Boca Raton, Florida on May 29, 2019 until May 5, 2020. Please see an excerpt from POM Pharma's memo to DEA dated 8/9/2021 at Exhibit 25.

iii. 10+ Month Delay (6/16/2020 to 5/4/2021): There was a second subsequent delay of over 10 months concerning POM Pharma's 2017 application following POM Pharma's June 16, 2020 reply until DEA responded on May 4, 2021. Please see an excerpt from POM Pharma's memo to DEA dated 8/9/2021 at Exhibit 25.

iv. ~ 18 Months of No DEA Formal Communication or Action (June 2020 to January 2022): Concerning POM Pharma's 2020 Application, there was a period of approximately 18 months during which no formal and substantive communications were provided to either POM Pharma or its 3PL following the request that Pentobarbital be added to the existing registration of POM Pharma's 3PL and the 3PL's submission of the Importer Questionnaire on June 9, 2020 (please see Exhibit 8) and until the 2020 Application became moot in January of 2022 after POM Pharma was notified by its 3PL that it was eliminating its logistics services for controlled substances and thereafter ceased to be a DEA registered importer and distributor (note - POM Pharma's 3PL had authorized DEA to communicate with POM Pharma regarding this 2020 Application; please see Exhibit 14). Moreover, DEA ultimately claimed to have no record of

the 2020 Application despite numerous communications with DEA regarding the 2020 Application (please see Paragraph 36, above).

v. Nearly 1 Year Delay: With respect to POM Pharma's 2021 Application, there was an approximately 1-year delay between March 14, 2021 when the 2021 Application was applied for, and March 9, 2022 when the 2021 Application was published in the Federal Register. For context, the average and median time between the date of the application and date of publication in the Federal Register for first-time[23] registrants in 2022 was 86 days and 61 days, respectively. Please see Exhibit 26.

vi. 8+ Month Delay (3/9/22 to 11/28/22): With respect to POM Pharma's 2021 Application, there was an approximately 8-month delay between the publication of POM Pharma's notice of application in the Federal Register on March 9, 2022 and DEA's formal letter dated November 28, 2022.

vii. 5+ Month Delay (3/22/23 to 8/31/23): With respect to POM Pharma's 2021 Application, most recently there was an approximately 5-month delay between POM Pharma's formal letter dated March 22, 2023 and DEA's formal reply dated August 31, 2023.

viii. Nearly 2 Year Delay: There has been a nearly 2-year delay since POM Pharma's notice of application was published in the Federal Register on March 9, 2022 (and no objections/comments were received). For context, the average and

[23] For purposes of this analysis, 'first-time' registrants are those importer registrants that appeared on DEA's list of registered importers in 2022, but not 2021; see https://www.deadiversion.usdoj.gov/drugreg/nor/importers/importers.html

median time between the date of publication in the Federal Register and the date of the notice of registration for first-time[24] registrants in 2022 was 121 days and 82 days, respectively. Please see Exhibit 26.

C. Examples of Repeated Requests for Previously Provided Information: DEA has, and continues to, repeatedly request information that was previously provided. Ordinarily repeatedly requesting information that has been previously provided would be a mere nuisance. However, in the context of DEA's delayed written responses (please see Paragraph 37.B, above) and ongoing refusal to meet and engage (please see Paragraph 37.A, above), these repeated requests for previously provided information further unreasonably delay and frustrate POM Pharma's efforts to import and distribute Pentobarbital.

i. Packaging, Sizes & Quantities:

a. POM Pharma has provided DEA with the anticipated packaging, sizes, and quantities on multiple prior occasions, including in response to DEA's February 21, 2023 request to "*[p]rovide the size and frequency of the packages of controlled substances that will be delivered to POM Pharma's Denver facility from suppliers…*"

b. POM Pharma stated in its March 22, 2023 reply that Pentobarbital in bulk API form would be imported from its supplier in "*500 gram bags (pre-packaged and pre-labeled)*" and initial distribution would be "*4 to 6 bags*

[24] For purposes of this analysis, 'first-time' registrants are those importer registrants that appeared on DEA's list of registered importers in 2022, but not 2021; see https://www.deadiversion.usdoj.gov/drugreg/nor/importers/importers.html

*(500 grams/bag) in one or two shipments per year,*" and at full distribution approximately "*80 bags (500 grams/bag) in two to four shipments per year*."

c. Notwithstanding, in DEA's next formal written volley – over 5 months later – dated August 31, 2023, DEA asks the same question again (almost verbatim): "*[p]rovide the size and frequency of the packages of controlled substances that will be delivered to POM Pharma's Denver facility from suppliers.*"

ii. Supply Agreement:

a. POM Pharma executed a formal API Supply Agreement with its supplier on December 7, 2017 (amended March 1, 2019) and has provided DEA with this formal supply agreement on multiple prior occasions, including by email on August 30, 2021.

b. Notwithstanding, DEA's most recent formal correspondence concerning POM Pharma's 2021 Application dated August 31, 2023 asserted that "*DEA contacted [POM Pharma's Supplier] and learned that [POM Pharma's Supplier] has no contractual relationship or written agreement with POM Pharma.*" POM Pharma requested the name of the person that DEA spoke with at its supplier so that POM Pharma could clear up any misunderstandings in its forthcoming reply. DEA responded "*[u]fortunately we are unable to provide the name of the individual from [POM Pharma's Supplier]…*"

c. POM Pharma subsequently learned from its supplier that DEA relied on a receptionist (or equivalent position) to assert that POM Pharma did not have a formal agreement – despite having previously seen POM Pharma's formal supply agreement – and never bothered to inquire further or speak with the designated contact at POM Pharma's supplier that was provided to DEA and specifically identified as the contact.

D. Examples of Previously Addressed Issues Being Resurrected: DEA has, and continues to, resurrect issues that were previously addressed and resolved. Under normal circumstances such instances could quickly be acknowledged, and no further time and effort wasted. However, in the context of DEA's delayed written responses (please see Paragraph 37.B, above) and ongoing refusal to meet and engage (please see Paragraph 37.A, above), these ongoing resurrections further unreasonably delay and frustrate POM Pharma's efforts to import and distribute Pentobarbital.

i. Issue of Domestic Supply: Please see Paragraph 34, above.

ii. Issue of Bulk APIs vs. Rx Dosages for Individual Patients:

a. POM Pharma has repeatedly emphasized to DEA that it would only be importing Pentobarbital in bulk API (active pharmaceutical ingredient) form for subsequent compounding by designated pharmacies, and NOT individual dosage units for qualifying terminally ill patients. This was reflected correctly in POM Pharma's notice of application published in the Federal Register on March 9, 2022, stating:

> *"[POM Pharma] plans to import the listed controlled substance as* ***bulk active pharmaceutical ingredient (API) for distribution to***

> ***compounding pharmacies***. *It is intended for pharmacies who seek to compound the material into dosage units that will be distributed to terminally ill patients for ''medical aid in dying'' (MAID) in U.S." (emphasis added by Plaintiff)*

b. Notwithstanding, in DEA's most recent letter dated August 31, 2023 – nearly 2 years following the notice of POM Pharma's application published in the Federal Register – DEA asks the following:

> *"What steps will POM Pharma take to ensure* ***dosages units or bottles*** *within the outside packaging provided by the supplier are adequately sealed and have adequate child-proof packaging?*" (emphasis added by Plaintiff)

E. Examples of DEA's Willful Disregard of its Own Controlled Substances Act and/or the Basics of the Importation and Distribution of Controlled Substances Act: Over nearly 6 years and across 3 separate applications there have been statements and questions that reveal DEA's willful disregard of both trivial and fundamental provisions of its own Controlled Substances Act and/or the basics of the importation and distribution of controlled substances. In the context of DEA's delayed written responses (please see Paragraph 37.B, above) and ongoing refusal to meet and engage (please see Paragraph 37.A, above), this willful disregard by DEA further unreasonably delays and frustrates POM Pharma's efforts to import and distribute Pentobarbital.

i. Willful Disregard for the Distinction Between Importer vs. Exporter:

a. In the DEA's memo dated May 4, 2021 concerning POM Pharma's 2017 Application, the DEA requests:

> *"Please explain, in detail, why POM seeks to register as an importer, rather than as an exporter."*

b. POM Pharma replied in its August 9, 2021 response (and included a corresponding graphic, please see Exhibit 27):

> *"21 CFR §1300.01(b) provides:*
>
> - *"Import means, with respect to any article, any bringing in or introduction of such article into the customs territory of the United States from any place outside thereof…" (emphasis added)*
> - *"Importer includes every person who imports… controlled substances listed in any schedule." (emphasis added)*
> - *"Export means, with respect to any article, any taking out or removal of such article from the United States …"*
> - *"Exporter includes every person who exports… controlled substances listed in any schedule."*
>
> *POM Pharma seeks to "bring into" the United States from outside of the United States the controlled substance Pentobarbital Sodium and therefore is an "importer." POM Pharma does not seek to "take out" or "remove" from the United States the controlled substance Pentobarbital Sodium and therefore is not an "exporter.""*

ii. Willful Disregard that Importers are NOT Also Required to be Manufacturers:

a. In DEA's memo dated August 31, 2023, DEA states:

> *"It also appears that your planned business activity, in seeking to avoid having to relabel and repackage controlled substances, is designed to circumvent the need to obtain a manufacturing registration. This again raises concerns about whether your planned activity will protect against diversion and be consistent with public health and safety."*

b. To which POM Pharma responded, in part:

> *"POM is not seeking registration as a manufacturer because POM Pharma's plan of importation and distribution does not require POM Pharma to engage in the activity of "manufacturing" (e.g., the synthesis of chemicals in a lab to create a pharmaceutical drug) nor the activities of "repacking" and "relabeling" that are not commonly thought of as "manufacturing" per se but*

> *nonetheless, for purposes of the CSA, are deemed to constitute "manufacturing."*
>
> *The absence of "repackaging" or "relabeling" in POM Pharma's plan of importation and distribution lessens the risk of diversion because, among other considerations, there are fewer steps and less people involved.*
>
> *The absence of "repackaging" or "relabeling" in POM Pharma's plan of importation and distribution avoids the increased regulatory costs that registered manufacturers incur and in doing so furthers the public interest of lower prescription drug prices (as these additional unnecessary costs would otherwise need to be passed on, ultimately resulting in higher prescription drug prices)."*

38. **There is cause for concern that DEA is exceeding its discretion and abusing its power in its treatment of POM Pharma and discovery will allow POM Pharma to assess whether the Controlled Substances Act is being applied uniformly and without bias.**

A. DEA routinely has relied on 21 C.F.R. 1301.15, which states in part:

> *"The Administrator may require an applicant to submit such documents or written statements of fact relevant to the application as he/she deems necessary to determine whether the application should be granted…"*

B. While the foregoing regulation provides DEA with broad discretion, it is not a license to commit regulatory harassment of an applicant and/or to apply the standards of the Controlled Substances Act in an arbitrary and capricious manner that is rooted in bias.

## VII. Claims

### First Claim – Violation of the Administrative Procedure Act

39. POM Pharma re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

40. POM Pharma submitted its 2021 Application to become licensed as a registered importer of Pentobarbital on March 14, 2021.

41. DEA accepted the filing of POM Pharma's 2021 Application, assigning it DEA Control Number W21024430J.

42. Under the Administrative Procedure Act, DEA has a duty to process POM Pharma's 2021 Application within a reasonable time:

A. 5 U.S.C. §558(c) provides:

> "***When application is made for a license required by law***, *the agency*, ***with due regard for the rights and privileges*** *of all the interested parties or adversely affected persons* ***and within a reasonable time***, ***shall set and complete*** *proceedings required to be conducted in accordance with sections 556 and 557 of this title or* ***other proceedings required by law and shall make its decision.*** (emphasis added).

B. 5 U.S.C. §551(12) defines "agency proceeding" to include the grant of licensure.

43. Defendant DEA has breached its duty by unreasonably delaying and frustrating POM Pharma's 2021 Application:

A. Courts commonly apply the "TRAC factors"[25] to the particular facts and circumstances of a case to assess whether agency delay is reasonable.

B. There are six TRAC factors:

i. *The time agencies take to make decisions must be governed by a "rule of reason";*

---

[25] Telecomm. Rsch & Action Ctr. v. FCC, 750 F.2d 70 (D.C. Cir. 1984)

ii. *Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;*

iii. *Delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;*

iv. *The court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;*

v. *The court should also take into account the nature and extent of the interests prejudiced by delay; and*

vi. *The court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.*

C. Application of the TRAC factors are applied on a case-by-case basis and the factors are not weighed equally, nor is any one factor determinative.

i. The first TRAC factor, the "rule of reason," is an assessment of whether the time for agency action has been reasonable, taking into account the "length of the delay" and the "reasons for the delay."

a. The length of delay has been excessive, particularly relative to other applications. For example, please see Paragraphs 37.B.v, vii, above.

b. There is no justifiable reason for the delay, but instead the delay is a continuation of DEA's pattern of unreasonable delay and frustration toward POM Pharma and the practice of MAID established over 6 years and 3 separate applications.

ii. The third TRAC factor, which "*…concerns delays that might be reasonable in the sphere of economic regulation but are less tolerable when human health and welfare are at stake…*", is the precise situation of this case: the unreasonable delay and frustration of POM Pharma's 2021 Application by DEA is precluding POM Pharma from making available – on a non-profit basis – the safest, most reliable, and most effective pharmaceutical drug for terminally ill patients that qualify for the practice of MAID.

iii. Concerning the fourth TRAC factor of "*…higher or competing agency priorities,*" over 6 years and 3 separate applications POM Pharma has repeatedly made pleas to DEA to meet and engage with POM Pharma in a substantive dialogue that would presumably allow the parties to better understand each other's concerns and attempt to ***efficiently resolve*** any outstanding issues, misunderstandings, errors, or deficiencies – thereby freeing DEA to focus on any higher and competing priorities, yet DEA continues to refuse to meet and engage substantively with POM Pharma.

iv. The "*nature and extent of the interests prejudiced by the delay*," or the fifth TRAC factor, concern POM Pharma's inability, due to DEA's delay, to make available – on a non-profit basis – the safest, most reliable, and most effective pharmaceutical drug (which is currently unavailable) for terminally ill patients that qualify for the practice of MAID, and as a result these terminally ill patients must rely on inferior pharmaceutical drugs.

v. The sixth TRAC factor, which provides that "…*the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed..*", implies that the presence of agency impropriety should weigh heavily toward a finding of unreasonable delay. The pattern of unreasonable delay and frustration by DEA established over 6 years and 3 separate applications for the importation of Pentobarbital for use in the practice of MAID raises significant concerns about DEA impropriety.

44. Plaintiff has statutory standing and is entitled to judicial review:

A. 5 U.S.C §§702, 706(1) of the Administrative Procedure Act provide, respectively:

*"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof…"*; 5 U.S.C. §702, and

*"The reviewing court shall… compel agency action unlawfully withheld or unreasonably delayed…*"; 5 U.S.C. §706(1)

B. 5 U.S.C. §551(13) of the Administrative Procedure Act defines "agency action" to include the "failure to act."

*<u>Second Claim – Violation of Due Process Under the Fifth Amendment</u>*

45. POM Pharma re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

46. The Fifth Amendment of the United States Constitution provides that no one shall be deprived of property without due process.

47. POM Pharma's 2021 Application constitutes a property interest.

48. The process that POM Pharma is due is an impartial review of its 2021 Application.

49. On information and belief, DEA is not impartial and over the course of 6 years and 3 separate applications has demonstrated a deliberate bias against the use of Pentobarbital in the practice of medical aid in dying.

## VIII. Request for Relief

POM Pharma respectfully requests that the Court:

1. Grant judgment in favor of POM Pharma on its Complaint and declare that DEA has violated the Administrative Procedure Act and Fifth Amendment.

2. Enjoin DEA to:

A. Cease violating the Administrative Procedure Act and Fifth Amendment;

B. Take steps as may be necessary to prevent the recurrence of violations of the Administrative Procedure Act and Fifth Amendment; and

C. Compel DEA to make a timely and fair review of POM Pharma's 2021 Application.

3. Order other appropriate relief as the interests of justice may require.

[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Dated this 4th day of February, 2024

Respectfully submitted,

Peace of Mind Pharmaceuticals LLC
By: Matthew R. Larson
Its: President & Counsel

s/ Matthew R. Larson
3003 East 3rd Avenue, Suite B109A
Denver, CO 80209
Telephone: (303) 825-0108
E-mail: Matt@POMpharma.org
Colorado Reg. #36241

Counsel for Plaintiff

Exhibit 1
Overview of Medical Aid In Dying

**Medical Aid In Dying - Overview**

- **<u>Medical Aid In Dying</u>**: Medical aid in dying (MAID) allows a terminally ill, mentally capable person with a life expectancy prognosis of 6 months or less to request, obtain, and — if his or her suffering becomes too unbearable — self-administer medication that shortens the dying process and brings about a peaceful death.

  While very few people ultimately exercise medical aid in dying, countless people benefit from the peace of mind offered by simply having the option.

  - *<u>MAID Is NOT New</u>*: The practice of MAID has been authorized in Oregon since 1997. It is also authorized in Washington, Vermont, Montana, California, Colorado, D.C., Hawaii, New Jersey, Maine, and New Mexico. Legislation and/or ballot measures are pending or planned in multiple additional U.S. states.

  - *<u>MAID Is NOT Euthanasia</u>*: Euthanasia is something that someone does to someone else. In contrast, MAID is something that someone does to oneself, voluntarily. A key requirement of the respective laws is that the patient self-administers the medication, typically by voluntarily drinking a glass of water containing the dissolved medication.

  - *<u>MAID Is NOT Assisted Suicide</u>*: Suicide is for people that *want* to die. In contrast, MAID is for terminally ill patients with a 6-month or less prognosis who desperately want to live and have fought a long and courageous battle not to die.

  - *<u>MAID Is NOT a Replacement for Palliative Care and Hospice</u>*: MAID complements palliative care and hospice for the minority of instances where shortening the dying process is the only way to relieve the pain and suffering of what otherwise would be a prolonged and agonizing death.

  - *<u>MAID Is NOT Used Frequently (And Is NOT Intended to Be Used Frequently)</u>*: According to 2019 Oregon statistics, 290 terminally ill patients received MAID prescriptions. Of these, only 188 are reported to have actually used the medication. These statistics cite a death rate of 51.9 MAID deaths per 10,000 total deaths, or approximately one-half of 1% of all total deaths.[1]

  - *<u>MAID Is NOT a Political Issue</u>*: It is an issue of compassion, with support from liberals, independents, and conservatives. MAID enjoys wide support throughout the United States. The 2016 ballot measure in Colorado to authorize the practice of MAID was overwhelmingly approved by voters by a nearly 2-to-1 margin. Recent polling indicates a strong majority of U.S. adults support MAID.[2]

  - *<u>MAID Is NOT an Attack on Religion</u>*: Dying is one of the most, if not *the* most, spiritual events of one's life. People of *all* faiths should be able to choose for themselves the circumstances under which they leave this world.

  - *<u>MAID Is NOT About More Government – It's About Personal Liberty</u>*: MAID removes government from such a personal issue and instead allows people to decide for themselves – along with their family, faith, and doctors – what end-of-life options are best for them. In addition, doctors that don't want to offer the option of MAID are not required to – it is completely voluntary on the doctors' end as well.

---

[1] https://www.oregon.gov/oha/PH/PROVIDERPARTNERRESOURCES/EVALUATIONRESEARCH/DEATHWITHDIGNITYACT/Documents/year22.pdf
[2] https://www.compassionandchoices.org/resource/polling-medical-aid-dying/

Exhibit 2
DEA Letter to Congress dated 5/5/2020

**U.S. Department of Justice**
Drug Enforcement Administration

*Office of Congressional and Public Affairs* *Springfield, VA 22152*

May 5, 2020

The Honorable Earl F. Blumenauer
U.S. House of Representatives
Washington, DC 20515

Dear Congressman Blumenauer:

This responds to your letter to Acting Administrator Uttam Dhillon dated November 21, 2019, regarding DEA's process for approving applications to import medication used for medical aid-in-dying, specifically pentobarbital and secobarbital. We are sending identical responses to the other Members who joined in your letter.

Under the Controlled Substances Act (CSA), DEA is required to consider the public interest factors listed in 21 U.S.C § 823(a) when evaluating applications submitted by those seeking a registration to import Schedule II controlled substances such as pentobarbital and secobarbital pursuant to 21 U.S.C. § 958. Among other things, an applicant for registration as an importer must show that the proposed importation would comport with 21 U.S.C. § 952(a)(2). *See* 21 C.F.R. 1301.34. Section 952(a)(2) prohibits the importation of Schedule I and II controlled substances, as well as any narcotic in Schedule III, IV or V, unless in one of three enumerated circumstances: a) in an emergency in which domestic supplies are found to be inadequate; b) in any case in which competition among domestic manufacturers is inadequate and will not be rendered adequate by the registration of additional manufacturers; or c) in any case in which the substance is in limited quantities used exclusively for scientific, analytical or research purposes.

The DEA evaluates each application for registration as an importer in accordance with the statutory criteria set forth in 21 U.S.C. 958, which incorporates the criteria from 21 U.S.C. § 823(a). Among other things, this would include an assessment of whether the proposed use of the controlled substance complies with federal and applicable state law, and the likelihood that the controlled substance would be diverted for recreational abuse or other illicit purposes.

At the time of application, the applicant has the burden of showing that the import is legitimate under 21 U.S.C. § 952(a). Under 21 U.S.C. § 952(a) (2) (A), availability is a factor. If the applicant seeks approval of the importation on the ground that competition among domestic manufacturers is inadequate, the applicant must make the requisite showing under 21 C.F.R. 1301.34(d)-(e), for which cost and availability of the substance and potential substitutes are factors.

In making a determination as to whether the applicant's registration is consistent with the public interest, DEA would evaluate on a case-by-case basis this information along with the factors enumerated in 21 U.S.C. § 823(a). We have enclosed a summary of applications for the importation and registration of pentobarbital or secobarbital since 2014 that have been approved or denied by DEA, are currently pending, or have been withdrawn.

We hope this information is helpful. Please do not hesitate to contact this office again if we may provide additional assistance regarding this or any other matter.

Sincerely,

Katie A. Laughery
Section Chief
Congressional Affairs Section

Enclosure

Supplemental Summary for Imports of Pentobarbital and Secobarbital 2014-Present

| List of Registrations for Approved Importers of Pentobarbital Since 2014 | | | | | |
|---|---|---|---|---|---|
| Registrant | Date of Approval | Status | Amount Requested (g) | Amount Imported (g) | Comments |
| 1 | 01/27/2015 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 2 | 04/07/2016 | Active | 0.556 | 0.373 | Difference is for an approved import to occur on 08/202 |
| 3 | 05/21/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 4 | 05/23/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 5 | 12/11/2014 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 6 | 12/12/2019 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| *Since 2014, DEA has approved the importation of 9695.761kg of Pentobarbital by DEA registrants that applied for registration prior to 2( | | | | | |

| List of Registrations for Approved Importers of Secobarbital Since 2014 | | | | | |
|---|---|---|---|---|---|
| Registrant | Date of Approval | Status | Amount Requested (g) | Amount Imported (g) | Comments |
| 1 | 01/27/2015 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 2 | 04/07/2016 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 3 | 05/21/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 4 | 05/23/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| 5 | 12/12/2019 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to impor |
| *Since 2014, DEA has approved the importation of 14.754g of Secobarbital by DEA registrants that applied for registration prior to 2014 | | | | | |

| List of Registration Applications Withdrawn of Importers of Pentobarbital Since 2014 | | |
|---|---|---|
| Registrant | Date Withdrawn | Reason |
| 1 | 4/16/2019 | At the request of the applicant based on retired of DEA number |
| 2 | 4/29/2015 | Applicant indicated a different direction for the company |

| List of Registration Applications Withdrawn of Importers of Secobarbital Since 2014 | | |
|---|---|---|
| Registrant | Date Withdrawn | Reason |
| 1 | 4/29/2015 | None Given By Applicant |

| List of Registration Applications Denied of Importers of Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Registration Application has been denied by DEA for registration as a Pentobarbital or Secobarbital Importer since 2014 |

| List of Permit Applications Denied for the Importation of Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Permit Application has been denied by DEA for Importation of Pentobarbital or Secobarbital since 2014 |

| List of Pending Registration Applications of Importers of Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Pending Registration Application for registration as a Pentobarbital or Secobarbital Importer |

| List of Pending Permit Applications to Import Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Pending Permit Applications for Importation of Pentobarbital or Secobarbital |

Supplemental Summary for Imports of Pentobarbital and Secobarbital 2014-Present

| List of Registrations for Approved Importers of Pentobarbital Since 2014 | | | | | |
|---|---|---|---|---|---|
| Registrant | Date of Approval | Status | Amount Requested (g) | Amount Imported (g) | Comments |
| 1 | 01/27/2015 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 2 | 04/07/2016 | Active | 0.556 | 0.373 | Difference is for an approved import to occur on 08/2020 |
| 3 | 05/21/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 4 | 05/23/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 5 | 12/11/2014 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 6 | 12/12/2019 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| *Since 2014, DEA has approved the importation of 9695.761kg of Pentobarbital by DEA registrants that applied for registration prior to 2014 | | | | | |

| List of Registrations for Approved Importers of Secobarbital Since 2014 | | | | | |
|---|---|---|---|---|---|
| Registrant | Date of Approval | Status | Amount Requested (g) | Amount Imported (g) | Comments |
| 1 | 01/27/2015 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 2 | 04/07/2016 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 3 | 05/21/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 4 | 05/23/2018 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| 5 | 12/12/2019 | Active | 0.00 | 0.00 | Approved DEA importer but has not requested to import |
| *Since 2014, DEA has approved the importation of 14.754g of Secobarbital by DEA registrants that applied for registration prior to 2014 | | | | | |

| List of Registration Applications Withdrawn of Importers of Pentobarbital Since 2014 | | |
|---|---|---|
| Registrant | Date Withdrawn | Reason |
| 1 | 4/16/2019 | At the request of the applicant based on retired of DEA number |
| 2 | 4/29/2015 | Applicant indicated a different direction for the company |

| List of Registration Applications Withdrawn of Importers of Secobarbital Since 2014 | | |
|---|---|---|
| Registrant | Date Withdrawn | Reason |
| 1 | 4/29/2015 | None Given By Applicant |

| List of Registration Applications Denied of Importers of Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Registration Application has been denied by DEA for registration as a Pentobarbital or Secobarbital Importer since 2014 |

| List of Permit Applications Denied for the Importation of Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Permit Application has been denied by DEA for Importation of Pentobarbital or Secobarbital since 2014 |

| List of Pending Registration Applications of Importers of Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Pending Registration Application for registration as a Pentobarbital or Secobarbital Importer |

| List of Pending Permit Applications to Import Pentobarbital or Secobarbital Since 2014 |
|---|
| *No Pending Permit Applications for Importation of Pentobarbital or Secobarbital |

Exhibit 3
False Assertion of an Adequate Domestic Supply /
DEA Email dated 8/8/2018

**Matt Larson**

| | |
|---|---|
| **From:** | Oesterle, Drew S. <Drew.S.Oesterle@usdoj.gov> |
| **Sent:** | Wednesday, August 8, 2018 3:26 PM |
| **To:** | CONTACT@POMPHARMA.ORG |
| **Subject:** | DEA Registration Request |

Hello,

My name is Drew Oesterle, a Diversion Investigator with the Drug Enforcement Administration. I have been assigned to your application for a new registration with DEA.

In December of 2017, you applied as an Importer with privileges in schedules 2N, with the intent to import Pentobarbital (Drug Code 2270). I have received notification from DEA Headquarters and it was determined that there is an adequate supply of Pentobarbital domestically, therefore this new application to import Pentobarbital will not be approved.

Therefore, I respectfully request that you withdraw your application for a DEA registration. You can do so by acknowledging this email and requesting that we withdraw the application.

Thank you,

Drew Oesterle
Diversion Investigator
DEA Denver Field Office
O- 720-895-4263
C- 720-413-0327

Exhibit 4
False Assertion of an Adequate Domestic Supply /
Excerpt from POM Pharma's 5/18/2018 Memo to DEA

POM Pharma

**TO:** DEA
**FROM:** POM Pharma LLC**,** Matt Larson, Esq., President
**RE:** POM Pharma Application to Import Pentobarbital Sodium; DEA Form 225 (submitted 12/7/2017)
**DATE:** 5/18/2018

## Background

- **POM Pharma:** POM Pharma is a United States *non-profit* specialty pharmaceutical organization focused on products that offer *peace of mind* to terminally ill U.S. patients. Specifically, POM Pharma seeks to further the advancement and development of medication that is specifically for the practice of "medical aid in dying" ("MAID").
- **Medical Aid In Dying**: MAID allows a terminally ill, mentally capable person with a life expectancy prognosis of 6 months or less to request, obtain and — if his or her suffering becomes too unbearable — self-administer medication that shortens the dying process and brings about a peaceful death. MAID is currently authorized in seven U.S. states and Washington D.C.

## Registered Domestic Manufacturers of Pentobarbital Sodium API [1]

In an effort to demonstrate that POM Pharma has met the standards to import a controlled substance, we redoubled our efforts to contact all of the currently registered U.S. manufacturers of Pentobarbital Sodium and requested that they supply POM Pharma, or alternatively provide a formal denial. Below is a summary of the responses and the denials are attached as Exhibits.

| Manufacturer | Contact | Contact Title | Contact Phone | Contact Email | Date of Request | Date of Response | Response |
|---|---|---|---|---|---|---|---|
| AMRI Rensselaer, Inc | Lori Ann Blancato | Executive Assistant to Sr. Mgmt. | 781-672-4548 | LoriAnn.Blancato@amriglobal.com | 5/3/2018 | 5/4/2018 | Denial; see Notes |
| Cayman Chemical Company | Joe Monteith | Inside Sales Representative | 734-929-1642 | jmonteith@caymanchem.com | 5/3/2018 | 5/8/2018 | Denial; see Notes |
| Cerilliant Corporation | Gina Meyers | Product Specialist, Reference Materials | 512-310-5107 | gina.meyers@sial.com | 5/3/2018 | 5/7/2018 | Denial; see Notes |
| Chattem Chemicals, Inc. | Mike Campbell | Business Manager | 423-822-5056 | Mike.Campbell@sunpharma.com | 5/3/2018 | 5/4/2018 | Denial; see Notes |
| Chemtos, LLC | Khalid Thakur | Senior Manager | 512-686-4525 | khalid.thakur@chemtos.com | 5/11/2018 | 5/11/2018 | Denial; see Notes |
| Cody Laboratories, Inc. | Paul Heslin | Director Business Development | 302-299-0504 | pheslin@codylabs.com | 3/7/2018 | 5/16/2018 | Denial; see Notes |
| Navinta LLC | Dr. Shah | Senior Manager | 609-883-1135 | sales@navinta.com | 5/4/2018 | 5/4/2018 | Denial; see Notes |
| Siegfried USA, LLC | Craig Douglas | Global Head API Portfolio | 609-412-2051 | Craig.Douglas@siegfried-usa.co | 3/28/2018 | 5/1/2018 | Denial; see Notes |

## POM Pharma's Request to the DEA

POM Pharma again respectfully requests that the DEA publish the POM Pharma application in the Federal Register. Alternatively, we respectfully request that a formal "order to show cause" be issued pursuant to 21 CFR §1301.37 so that POM Pharma may exercise its rights to request a hearing pursuant to 21 CFR §1301.43.

[1] The DEA has declined to provide POM Pharma a list of the current U.S. registered manufacturers of Pentobarbital Sodium, so POM Pharma was required to undertake a laborious review of every Federal Register publication for the period 7/22/2016 to 5/9/2018.

Exhibit 5
False Assertion of an Adequate Domestic Supply /
DEA Email dated 7/9/2019

## Matt Larson

**From:** Roth, Kurtis R. <Kurtis.R.Roth@usdoj.gov>
**Sent:** Tuesday, July 9, 2019 10:30 AM
**To:** Matt Larson
**Subject:** Meeting

Hello Mr. Larson,

The meeting at DEA that was postponed last week has been rescheduled for this week. The discussion will revolve around whether pentobarbital should be allowed to be imported into the United States when a sufficient domestic supply already exists but domestic suppliers will not sell the product. A relevant citation is 21 U.S.C. § 952(a)(2).

As you may suspect, DEA attorneys will take some time to consider all the facts and do some research before providing a final position. I will do my best to stay on top of this so that we can provide a timely response to you.

Regards,

Kurt Roth
Staff Coordinator
Regulatory Section (DRG)
DEA Diversion Control Division
202-307-4022

Exhibit 6
Inconsistent Assertions /
DEA Email dated 10/8/2019

**Matt Larson**

**From:** Langston, Susan C. <Susan.C.Langston@usdoj.gov>
**Sent:** Tuesday, October 8, 2019 5:09 PM
**To:** matt@pompharma.org
**Subject:** Fwd: POM Pharma / Follow Up

Sent from my iPhone

Begin forwarded message:

From: "Barron, Charlotte D." <CDBarron@dea.usdoj.gov<mailto:CDBarron@dea.usdoj.gov>>
Date: October 8, 2019 at 5:04:43 PM EDT
To: "Langston, Susan C." <SCLangston@dea.usdoj.gov<mailto:SCLangston@dea.usdoj.gov>>
Cc: "Martin, Anastasia T." <ATMartin2@dea.usdoj.gov<mailto:ATMartin2@dea.usdoj.gov>>
Subject: Re: POM Pharma / Follow Up

Thank you Susan for the information. Diversion Control (DC) had a meeting with Chief Counsel (CC) today to discuss how to move forward with POM's pending Importer Registration. It was decided that the West Palm Office need to complete the pre-registration investigation.

CC recommend that this on-site is conducted in the same manner you conduct any Importer pre-registration investigation. Does the DIs send out a questionnaire prior to conducting the pre-registration onsite? Has Mr. Larson been provided any information as it relates to the type of security that is required for an Importer registration? Has anyone discussed record keeping with Mr. Larson? I know these questions are asked during a pre-reg on-site investigation,however, some divisions discuss these issues prior to the on-site and again during the on-site. He needs to be clear that he is required to have separate storage and/or security from Woodfield. POM's security must meet the criteria for an Importer of schedule II controlled substances.

CC concurs with DC that price of a drug does not fall under USC 823, therefore, can not be used as a justification to import if there is adequate domestic supply.

Susan we can discuss tomorrow if you have any questions. Thanks

Sent from my iPhone

On Oct 8, 2019, at 4:33 PM, Langston, Susan C. <SCLangston@dea.usdoj.gov<mailto:SCLangston@dea.usdoj.gov>> wrote:

Hi Charlotte,

The Florida Nonresident RX Drug Manufacturer allows POM to import.

No other state license is needed.

Exhibit 7
Inconsistent Assertions /
Members of Congress Letter to DEA dated 11/21/2019

# Congress of the United States

Washington, DC 20510

November 21, 2019

Mr. Uttam Dhillon
Acting Administrator
United States Drug Enforcement Administration
8701 Morrissette Drive
Springfield, VA 22152

Dear Acting Administrator Dhillon:

We write to inquire about the Drug Enforcement Agency (DEA) process for approving applications to import medication used for medical aid in dying (MAID), specifically pentobarbital and secobarbital.

In 1997, Oregon enacted the Death with Dignity Act, the first-in-the-nation legislation allowing certain terminally-ill patients to end their lives by self-administering lethal medications prescribed to them by their doctor.[1] Since then, eight other states and the District of Columbia have passed similar laws permitting MAID.[2]

Although approximately 20 percent of the United States population now lives in a state that permits MAID,[3] significant barriers to accessing safe and effective care remain, including the cost and availability of medications. In the past, short-acting barbiturates, like pentobarbital and secobarbital, have most commonly been prescribed for MAID.[4] However, in recent years, these medications have become prohibitively expensive—secobarbital can cost upwards of $3,000 for a single dose[5]—or completely unavailable in the United States. People facing a terminal illness should be able to spend their remaining days with loved ones. They should not have to struggle to locate medicine that allows them to determine their end of life story, or worry about the financial impact on them and the loved ones they leave behind.

Under the Controlled Substances Act,[6] the DEA has the authority to approve the importation of certain drugs, including pentobarbital and secobarbital, if they meet medical, scientific or other legitimate needs and the domestic market for the drugs is deemed inadequate. Pentobarbital and secobarbital meet these criteria. Furthermore, we have been informed that there are applications pending with the DEA to import these medications with the goal of lowering the cost of end of life decisions for people choosing MAID.

In order for us to better understand how the DEA evaluates applications to import these medications, please respond to the following questions by December 5, 2019:

---

[1] Oregon Health Authority. "About the Death with Dignity Act." https://www.oregon.gov/oha/PH/PROVIDERPARTNERRESOURCES/EVALUATIONRESEARCH/DEATHWITHDIGNITYACT/Pages/index.aspx

[2] Washington, Vermont, Montana, California, Colorado, Washington D.C., Hawaii, New Jersey and Maine; authorization in Montana based on a ruling of the Montana Supreme Court.

[3] Span, Paula. "Physician Aid in Dying Gains Acceptance in the U.S." *New York Times, January 16, 2017.* https://www.nytimes.com/2017/01/16/health/physician-aid-in-dying.html?module=inline

[4] Aleccia, JoNoel. "Docs in Northwest Tweak Aid-In-Dying Drugs to Prevent Prolonged Deaths." *Kaiser Health News, February 21, 2017.* https://khn.org/news/docs-in-northwest-tweak-aid-in-dying-drugs-to-prevent-prolonged-deaths/

[5] Nelson, Roxanne RN, BSN. "When Dying Becomes Unaffordable." *Medscape, November 4, 2019.* https://www.medscape.com/viewarticle/888271

[6] 21 USC §952

1. Please provide a list of all applications that have been approved for the importation and registration of pentobarbital or secobarbital since 2014. Please include the date of the approval, the quantity that was approved for importation, the specific basis for approval under the Controlled Substances Act, and the current status of the registration.

2. Please provide a list of all applications that have either been withdrawn or denied for the importation and registration of pentobarbital or secobarbital since 2014. Please include the date of withdrawal or denial, the quantity that was requested, and the reason for withdrawal or denial.

3. Please provide a list of all pending applications for the importation and registration of pentobarbital or secobarbital.

4. What factors does the DEA use to determine whether an application for pentobarbital or secobarbital is intended for legitimate use under the Controlled Substances Act?

5. To what extent does cost or availability of the medicine factor into the approval of an application?

Terminally-ill persons seeking MAID should be able to control their end of life experience. This means the federal government should do what it can to ease their suffering and ensure access to medications that they and their doctor have determined to be the best for them.

We look forward to your response.

Sincerely,

Ron Wyden
United States Senator

Earl Blumenauer
United States Representative

Jeffrey A. Merkley
United States Senator

Peter A. DeFazio
United States Representative

Kurt Schrader
United States Representative

Suzanne Bonamici
United States Representative

Exhibit 8
Proof of 2020 Application /
Importer Questionnaire emailed to DEA Headquarters

**Matt Larson**

| | |
|---|---|
| **From:** | Adam Runsdorf <arunsdorf@wdsrx.com> |
| **Sent:** | Tuesday, June 9, 2020 11:01 AM |
| **To:** | Videna, JanCarlo R |
| **Cc:** | Matt Larson |
| **Subject:** | Re: Woodfield Distribution, LLC - Importer Questions (2nd Form) |
| **Attachments:** | Woodfield Distribution, LLC - DEA Importer Questions (POM) 6-9-20.pdf |

JanCarlo,

Please see the attached Importer Questions Form and attached document for your review and further consideration. Note: This is a second submission and unrelated to the previous Importer Questions Form recently submitted related to our company's DEA Importer Registration #: RW0413548.

Thank you for your assistance in this matter.

Regards,

Adam

**Adam Runsdorf, President**
Woodfield Distribution, LLC
951 Clint Moore Road, Suite A
Boca Raton, FL 33487
Phone: (561) 998-3885 x 201
Mobile (561) 213-0701
Fax: (561) 998-3886
Email: arunsdorf@wdsrx.com

WDSrx
Confidence Beyond Compliance

10 YEARS WDSrx ESTABLISHED 2010

This e-mail message and its attachments (if any) are intended solely for the use of the addressee hereof. In addition, this message and any attachments may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply e-mail and delete this message from your system.

**U. S. DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**
**IMPORTER QUESTIONS**
**SCHEDULE I & II CONTROLLED SUBSTANCES**

Firms name: Woodfield Distribution, LLC

**Dear DEA Registrant:**

**In order to process your company's request to import Schedule I and/or II controlled substances, the DEA's Regulatory Unit (DRGR) must obtain the information requested in this questionnaire.**

**THIS QUESTIONNAIRE IS BEING SUBMITTED BY THE FOLLOWING:**

**SIGNATURE OF PERSON:** ____________________
**(PLEASE SIGN)**

**NAME OF PERSON SUBMITTING:** Adam Runsdorf
**(PLEASE PRINT)**

**TITLE OF PERSON:** President

**NAME OF COMPANY:** Woodfield Distribution, LLC

**DEA REGISTRATION#** RW0413548

**TELEPHONE#** 561.998.3885 Ext. 201

**E-MAIL ADDRESS:** arunsdorf@wdsrx.com

**FAX NUMBER:** 561.998.3886

**DATE OF SUBMISSION:** This questionnaire was received and returned via email on June 9, 2020

**The following questions pertain to your request to import Schedule I and/or II controlled substances. Please provide a detailed response to the following questions for each Schedule I and/or II drug code your company wishes to import.**

1. **What type of controlled substance does your company intend to import: bulk or dosage form?**

   Pentobarbital sodium, in bulk API form;
   Administration Controlled Substance Code Number 2270 [21 CFR 1308.12(e)(3)]

**2. What is the purpose for the importation of the controlled substance? (For example: narcotic raw material for bulk manufacture, clinical trials, research, analytical purposes, or distribution)**

Woodfield Distribution, LLC ("Woodfield") is acting in its capacity as a third-party logistics provider (3PL) for its customer Peace of Mind Pharmaceuticals, LLC ("POM Pharma"). The imported pentobarbital sodium API will be distributed by Woodfield, at POM Pharma's direction, to compounding pharmacies pursuant to 21 USC §353a.

**3. Why is a foreign source of supply being used instead of a domestic source?**

See Question #15, below.

**4. What is the name, address, method of shipment, and method of delivery for each supplier of the controlled substance your company proposes to import?**

[redacted]

Method of shipment/delivery will be determined on an order by order basis in the future, but will be made in accordance with 21 CFR 1312.12(b)(6) and its prohibition of importation of controlled substances in Schedules I and II by mail.

**5. Does your company have a firm commitment from the supplier(s) of each substance proposed for importation?**

Woodfield, acting as POM Pharma's a 3PL, will take possession of the API (POM Pharma will not take physical possession of the API).

POM Pharma has an executed "API Supply Agreement" with [redacted] that functions as a "master agreement" pursuant to which future individual product orders will be made from time to time. Such individual product orders will provide the specifics of each respective order (e.g., shipping terms, quantities, etc.).

**a. What is the time period of the commitment?**

THE INFORMATION IN THIS QUESTIONAIRE IS CERTIFIED AS ACCURATE AND CURRENT AS OF
(DATE) 6/9/20 SIGNATURE [signature]

The "master agreement" (i.e., the API Supply Agreement) is terminable upon 60 days advance notice, provided that there are no individual product orders outstanding.

**b. What quantity is involved?**

The "master agreement" (i.e., the API Supply Agreement) does not contain any specific quantities.

**(Please attach copies of all commitment letters)**

None currently.

**6. What quantity of each controlled substance does your company anticipate importing on an annual basis?**

Subject to receipt of DEA approvals, orders for approximately 40 kilograms of pentobarbital sodium in bulk API form are anticipated in 2020.

**7. Who are your current and prospective customers? Please provide a list of names, addresses, and DEA numbers for each controlled substance. (Please attach copies of letters of interest from these customers)**

The pentobarbital sodium in bulk API will be distributed by Woodfield, at POM Pharma's direction, to compounding pharmacies in states where MAID is authorized.

**8. Will the controlled substance(s) you propose to import be used to manufacture controlled substances? If so, how, and in what quantity, are they to be manufactured?**

The imported pentobarbital sodium in bulk API form will be compounded by licensed/registered compounding pharmacies in accordance with 21 USC §353a and pursuant to a physician's prescription for an identified patient.

**9. Does your company have previous experience handling controlled substances? Please explain.**

Yes – Woodfield Distribution, LLC has been a 3PL since February 2010 and held various DEA registrations since 2010.

THE INFORMATION IN THIS QUESTIONAIRE IS CERTIFIED AS ACCURATE AND CURRENT AS OF
(DATE) 6/9/20 SIGNATURE [signature]

**10. Does your company have previous experience in the importation of controlled substances? Please explain.**

Yes – Woodfield Distribution, LLC has been a 3PL since February 2010 and held DEA Importer Registrations since 2012.

**11. When does your company anticipate selling a commercial product?**

The pentobarbital sodium in bulk API will be distributed by Woodfield, at POM Pharma's direction, to compounding pharmacies in states where MAID is authorized. Such distribution is currently anticipated to commence within approximately 3 months after receipt of DEA Form 225 approval and DEA Form 357 approval.

**12. Please provide a written description of what resources your company has committed to the establishment of your importation business pertaining to these drug codes. (For example, does your company intend to make, or has it made, any changes to your its physical plant, security system, production equipment, or recordkeeping system?) (Please provide a proposed time-frame for the completion of these activities)**

See Question #9 and #10, above.

**13. Does your company currently possess any other registrations from the Drug Enforcement Administration pertaining to controlled substances? If, so, please include the registration number(s), business activity, drug schedules, and expiration date for each registration.**

Yes – See Attached

**<u>SUPPLEMENTAL INFORMATION FOR NEW APPLICANTS OR FOR THE ADDITION OF A SPECIFIC CONTROLLED SUBSTANCE TO AN EXISTING DEA REGISTRATION – IMPORTERS</u>**

**Importer Questions:**

**(Note: To assist you in answering questions numbers #s 14 through 16, you may wish to consult the following DEA final order published in the Federal Register: Lyle E. Craker; Denial of Application, 74 FR 2101 (January 14, 2009).**

**If you are requesting to import a Schedule I or II controlled substance for the first time either as an entirely new applicant for DEA registration or adding a specific controlled**

**substance to an existing DEA registration, you must answer the following questions for each controlled substance:**

**14. Please describe your company's past experience with controlled substances. Please be specific with regard to dates, types of business activity, and schedules of controlled substances handled.**

High volume Distributor (3PL) with numerous clients with facility locations in Boca Raton, FL and Sugar Land, TX.

**15. If your company is applying to obtain a registration as an importer because it cannot purchase the needed controlled substance from existing bulk manufacturers for its business activity, please provide the names of the existing registered bulk manufacturers you contacted. Please include dates of contact, persons contacted, and method of contact.**

Woodfield is acting in its capacity as a third-party logistics provider (3PL) for its customer POM Pharma.

POM Pharma is a non-profit specialty pharmaceutical organization with the focus on medical aid in dying (MAID).

POM Pharma previously contacted all of the domestic manufacturers of pentobarbital sodium and none were willing to supply pentobarbital sodium to POM Pharma for POM Pharma's intended use of MAID.

For a complete list, please click here:

**16. Please describe in detail whether your company's proposal to import controlled substances will promote technical advances in the art of manufacturing these substances and in the development of new substances.**

The imported pentobarbital sodium in bulk API form will be compounded by licensed/registered compounding pharmacies in accordance with 21 USC §353a and pursuant to the specific requirements of the physician's prescription for such identified patient.

**Note: In answering question #17, your company bears the burden of demonstrating that either the existing supply or competition is inadequate within the meaning of 21 USC § 952 (a)(2). Particular consideration should be given to whether the existing**

**registered bulk manufacturers and importers of the controlled substance for which you seek registration can produce an adequate and uninterrupted supply of this substance under adequately competitive conditions and, if such competition among existing registrants is inadequate, whether such competition will not be rendered adequate by the registration of additional domestic bulk manufacturers. DEA has traditionally focused on the historical and present prices charged to those who lawfully acquire the controlled substance from the existing registered bulk manufacturers.**

**17. Please explain how you determined the domestic supply or manufacturing is inadequate.**

POM Pharma previously contacted all of the domestic manufacturers of pentobarbital sodium and none were willing to supply pentobarbital sodium to POM Pharma for POM Pharma's intended use of MAID.

See Question #15, above.

**Responses to this questionnaire may be returned to the DEA's Regulatory Unit (DRGR) by email or by fax:**

**Regular Mail/Fed Ex/UPS/DHL:**

**Drug Enforcement Administration**
**Attn: 303 Processing/DRGR**
**8701 Morrissette Drive**
**Springfield, VA 22152**

**Facsimile:**

**Fax# (202) 307-8101**
**Attn: 303 Processing/Marquita Brown/DRGR**

THE INFORMATION IN THIS QUESTIONAIRE IS CERTIFIED AS ACCURATE AND CURRENT AS OF
(DATE) 6/9/20 SIGNATURE [signature]

Firms name & DEA #:
Woodfield Distribution, LLC;
DEA # RW0413548

**If you have any questions, please contact one of the following individuals:**

| Name | Telephone# | E-Mail Address |
|---|---|---|
| Silvia Colon, Unit Chief | (202)598-8736 | Silvia.N.Colon@usdoj.gov |
| Marquita Brown, Program Analyst (P/A) | (202)353-1199 | Marquita.L.Brown@usdoj.gov |
| Kurt Roth, Staff Coordinator S/C | (202)307-4022 | Kurtis.R.Roth@usdoj.gov |
| Latisha Mckoy, P/A | (202)307-7296 | Latisha.D.Mckoy@usdoj.gov |
| Anthony Wilson, P/A | (202)307-4033 | Anthony.C.Wilson@usdoj.gov |

THE INFORMATION IN THIS QUESTIONAIRE IS CERTIFIED AS ACCURATE AND CURRENT AS OF
(DATE) 6/9/20 SIGNATURE [signature]

# Woodfield Distribution, LLC

Controlled Substances Registrations

[redacted]

Exhibit 9
Proof of 2020 Application /
Importer Questionnaire emailed to local DEA

**Matt Larson**

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Friday, June 12, 2020 10:13 AM
**To:** 'Eleazer, Lynda F.'
**Cc:** 'Graumlich, James W.'
**Subject:** RE: POM Pharma Reply to DEA Letter dated 5/5/20
**Attachments:** Woodfield Distribution, LLC - DEA Importer Questions (POM) 6-9-20.pdf

Thank you, Ms. Eleazer, for your prompt reply.

As you know, we are very anxious to obtain approval so that the terminally ill have an affordable and accessible option where MAID is authorized.

Related, while we wait for the DEA to respond to POM's recent 5/5/20 memo, we've asked our 3PL (Woodfield Distribution, LLC) to consider adding Pentobarbital Sodium to its existing importer registration. Attached is the questionnaire sent earlier this week by Woodfield to JanCarlo in your office.

Thanks again for your continued assistance.

Matt

---

**From:** Eleazer, Lynda F. <Lynda.F.Eleazer@usdoj.gov>
**Sent:** Friday, June 12, 2020 9:23 AM
**To:** Matt Larson <matt@pompharma.org>
**Cc:** Graumlich, James W. <James.W.Graumlich@usdoj.gov>
**Subject:** RE: POM Pharma Reply to DEA Letter dated 5/5/20

Mr. Larson,

At this time, DEA is still reviewing your response and we will be in touch with you in due course.

Regards,

GS Eleazer

---

**From:** Matt Larson <matt@pompharma.org>
**Sent:** Friday, June 12, 2020 10:07 AM
**To:** Eleazer, Lynda F. <LFEleazer@DEA.USDOJ.GOV>
**Subject:** RE: POM Pharma Reply to DEA Letter dated 5/5/20

Hello Ms. Eleazer,

I'm following up on my email and POM's response from a month ago.

Exhibit 10
Proof of 2020 Application /
DEA Email dated 10/20/2020

**Matt Larson**

**From:** Eleazer, Lynda F. <Lynda.F.Eleazer@usdoj.gov>
**Sent:** Tuesday, October 20, 2020 7:48 AM
**To:** Matt Larson
**Subject:** RE: POM Pharma / Pentobarbital

Mr. Larson,

I just wanted to confirm receipt of your email. Thank you.

---

**From:** Matt Larson <matt@pompharma.org>
**Sent:** Monday, October 19, 2020 4:51 PM
**To:** Eleazer, Lynda F. <LFEleazer@DEA.USDOJ.GOV>
**Subject:** RE: POM Pharma / Pentobarbital

Hello Ms. Eleazer,

Thanks again for taking the time to speak with me last week. As a follow up, I have reached out to POM Pharma's 3PL (Woodfield) and requested that they continue to pursue adding Pentobarbital (a CII) to their existing DEA importer registration on behalf of POM.

If/when Woodfield is successful in importing the Pentobarbital on POM Pharma's behalf, I'll honor my proposal to withdraw POM's application. However, in the interim (understanding that Woodfield's efforts might not be successful or at minimum they could take a while), I respectfully request that the DEA continue its review of POM's application (attached again is my latest response from 4 months ago) – and I'm available for a call or can make a trip to FL if you or Mr. Stockman have any questions. Related, as previously requested, is there a timeline that I can reasonably expect to receive a response from the DEA regarding POM's Pentobarbital application?

Thanks again for your continued help.

Matt

---

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Thursday, October 8, 2020 3:16 PM
**To:** 'Lynda.F.Eleazer@usdoj.gov' <Lynda.F.Eleazer@usdoj.gov>
**Subject:** POM Pharma / Pentobarbital

Hi Ms. Eleazer,

Are you available tomorrow (Friday 10/9) or sometime next week for a brief conversation regarding POM's ongoing efforts?

Specifically, I'd like to discuss if/how Woodfield Distribution (POM's third-party logistics provider or 3PL) might be able to add Pentobarbital to its existing importer registration so that it can import Pentobarbital on behalf of POM. From my perspective, having Woodfield be the DEA registered importer

would resolve what I perceive as the chief area of concern/confusion with POM's current application in which POM itself seeks to be the registered importer. If/when Woodfield were granted authorization to import Pentobarbital on POM's behalf, POM would be willing to withdraw its current application.

Aside from 1:30pm to 2:30pm Eastern on Friday 10/9 and the morning of Tuesday 10/13, I can accommodate your schedule.

Thank you for your continued help and efforts.

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

Exhibit 11
Proof of 2020 Application /
DEA Email dated 1/8/2021

**Matt Larson**

---

**From:** Barron, Charlotte D. <Charlotte.D.Barron@usdoj.gov>
**Sent:** Friday, January 8, 2021 11:57 AM
**To:** Matt Larson
**Cc:** Eleazer, Lynda F.
**Subject:** Re: POM Pharma / Pentobarbital (CII)

Mr. Larson

Group Supersivor Lynda Eleazer is the point of contact for all of your concerns. Once I return to work I will contact GS Eleazer to discuss your concerns.

As previously discussed DEA can't discuss another registrant with you.

Sent from my iPhone

On Jan 7, 2021, at 8:09 PM, Matt Larson <matt@pompharma.org> wrote:

Hello Ms. Barron,

I hope you are well and staying safe with both the pandemic and everything that is occurring in D.C. at the moment.

Recall, we previously spoke about POM Pharma's 3PL adding Pentobarbital (a CII) to its existing importer's registration. The conclusion of that conversation was that the DEA requires POM's 3PL to independently demonstrate that none of the currently registered domestic manufacturers are willing/able to supply the 3PL with Pentobarbital.

POM's 3PL is willing to undertake this effort, but has requested that POM pay it a fee for the time and personnel that is required to do so.

POM is willing to pay the fee. However, as a non-profit that I'm currently funding myself, I prefer not to spend money on expenses that might be avoided.

As such, I wanted to make an appeal to the DEA to permit POM's 3PL to rely on and submit the denials that POM previously received – the logic being that, by definition, a 3PL is precluded from taking ownership of a pharmaceutical drug. Accordingly, the domestic manufacturers that previously denied POM would still be required to sell the API to POM – the only difference being that the API would be sent to POM's 3PL.

If you think you are able to persuade the DEA to take mercy on POM, great and much appreciated! If not, I understand – but if you would please let me know so that we can submit payment to our 3PL asap to avoid any further delays.

Thanks for your continued help – I really appreciate it!

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org<https://protect2.fireeye.com/v1/url?k=5a406ef1-05db560a-5a474a14-ac1f6b0176a2-6d40fd29b432db1c&q=1&e=bb792c67-e151-437f-80e5-113019d2c4ff&u=http%3A%2F%2Fwww.pompharma.org%2F>

Exhibit 12
Proof of 2020 Application /
Email to DEA dated 1/12/2021

**Matt Larson**

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Tuesday, January 12, 2021 10:21 AM
**To:** 'Barron, Charlotte D.'; 'Eleazer, Lynda F.'
**Subject:** POM Pharma / Pentobarbital (CII)
**Attachments:** POM Pharma LLC - DEA Form 225 - 2020-06-23.pdf; POM Pharma LLC - DEA Letter to POM - 2020-06-16.pdf

Ms. Eleazer and Ms. Barron,

I'm writing to request an update on two fronts:

1. **POM Pharma's Pentobarbital Sodium (CII) Importer Application**: It has been over 6 months since POM Pharma has obtained any substantive communication following POM Pharma's 6/23/20 reply to the DEA's 6/16/20 inquiry (see attached).

   Moreover, this application has been pending for over 3 years and it has been over 1.5 years since POM visited our 3PL's facility in May 2019 and was told by the FL DEA Diversion Program Manager that it had passed the field inspection.

   What is the status?

   On information and belief, the ongoing disconnect between the DEA and POM Pharma is whether the CSA permits POM Pharma to rely on its 3PL to meet the CSA's security requirements set forth in 21 CFR §1301.71 et seq.?

   Do you agree that this is the issue?

   If so, I think both sides have sufficiently argued their points and *POM Pharma respectfully requests that the DEA please issue a formal order to show cause (i.e., a denial) of POM's application so that POM Pharma may pursue its judicial remedies*.

2. **Adding Pentobarbital Sodium (CII) to a 3PL Application**: As a workaround to what POM Pharma perceives to be the DEA's primary issue with POM's application (i.e., POM's reliance on its 3PL) – POM Pharma has requested its 3PL add Pentobarbital to its existing importer registration.

   I acknowledge and understand that the DEA cannot discuss another party's application – so we'll just discuss a generic 3PL in the abstract.

   Based on our communications, the DEA has informed POM that a 3PL would need to duplicate the same efforts POM has previously undertaken to show that the domestic manufacturers of Pentobarbital are unable/unwilling to sell Pentobarbital in bulk and for MAID purposes. However, a 3PL by definition does not take title to any drugs – so these same domestic manufacturers would still be selling the Pentobarbital to POM.

   Please confirm that a 3PL does not have to duplicate POM Pharma's prior efforts?

Thank you.

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

Exhibit 13
Proof of 2020 Application /
DEA Email dated 1/19/2021

**Matt Larson**

**From:** Heard, Joffrey G <Joffrey.G.Heard@usdoj.gov>
**Sent:** Tuesday, January 19, 2021 6:45 AM
**To:** Matt Larson
**Subject:** RE: DEA Application - POM PHARMA LLC

Mr. Larson,

Thank you for providing this information.

**Joffrey Heard**
**Diversion Investigator**
DEA West Palm Beach District Office
Desk: 571-362-2781; Cell: 561-268-8635

---

**From:** Matt Larson <matt@pompharma.org>
**Sent:** Friday, January 15, 2021 2:06 PM
**To:** Heard, Joffrey G <JGHeard@dea.usdoj.gov>
**Cc:** Eleazer, Lynda F. <LFEleazer@DEA.USDOJ.GOV>
**Subject:** RE: DEA Application - POM PHARMA LLC

Hello Mr. Heard,

Attached are communications that were previously submitted to the DEA that include the requested info.

Please let me know if you require anything else.

Thank you.

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

---

**From:** Heard, Joffrey G <Joffrey.G.Heard@usdoj.gov>
**Sent:** Friday, January 15, 2021 10:13 AM
**To:** Matt Larson <matt@pompharma.org>
**Cc:** Eleazer, Lynda F. <Lynda.F.Eleazer@usdoj.gov>
**Subject:** DEA Application - POM PHARMA LLC

Good Afternoon Mr. Larson,

My supervisor Lynda Eleazer asked me to reach out to you and ask for you to provide copies of the letters that you previously sent out to the domestic suppliers of Pentobarbital, requesting sale to POM PHARMA. In addition, please provide copies of the responses that you received from the domestic suppliers denying sale of the Pentobarbital to POM.

Thank you.

**Joffrey Heard**
**Diversion Investigator**
Drug Enforcement Administration
West Palm Beach District Office
Cell - 561-268-8635
Desk - 571-362-2781
joffrey.g.heard@usdoj.gov
http://www.deadiversion.usdoj.gov

Exhibit 14
Proof of 2020 Application /
Emailed Letter to DEA dated 1/20/2021

WDSrx™

WOODFIELD DISTRIBUTION, LLC
951 CLINT MOORE ROAD, SUITE A
BOCA RATON, FL 33487
561.998.3885 phone
561.998.3886 fax
www.wdsrx.com

January 20, 2021

Lynda Eleazer, Diversion Group Supervisor
U.S. Department of Justice
Drug Enforcement Administration
West Palm Beach District Office
444 W Railroad Ave., Suite 500
West Palm Beach, FL 33401

**Re: DEA Importer Registration Number: RW0413548**

Dear Ms. Eleazer:

Please accept this letter as Woodfield Distribution, LLC's authorization for your continued discussion and disclosure of certain related information on behalf of our company to Peace of Mind Pharmaceuticals, LLC as per your discretion.

As previously mentioned, Woodfield Distribution, LLC is seeking to assist with the import of approximately 50 kilograms annually of Pentobarbital Sodium for use in medical aid in dying.

If you have any questions or require additional information in regard to matter, please feel free to contact me directly at (561) 998-3885 Ext: 201 or arunsdorf@wdsrx.com.

Thank you for your review and consideration in this matter.

Sincerely,

Adam Runsdorf
President

Exhibit 15
Proof of 2020 Application /
Email to DEA dated 3/1/2021

## Matt Larson

**From:** Adam Runsdorf <arunsdorf@wdsrx.com>
**Sent:** Thursday, March 11, 2021 12:03 PM
**To:** Matt Larson
**Subject:** FW: Re: Woodfield Distribution, LLC -
**Attachments:** Woodfield Distribution, LLC - Pentobarbital Sodium FINAL 2021-01-27 SIGNED.pdf; Woodfield Distribution LLC - Pentobarbital Sodium 2021-01-27 Tracking.pdf

See Below.

Regards,

Adam

**Adam Runsdorf, President**
Woodfield Distribution, LLC
951 Clint Moore Road, Suite A
Boca Raton, FL 33487
Phone: (561) 998-3885 x 201
Mobile (561) 213-0701
Fax: (561) 998-3886
Email: arunsdorf@wdsrx.com

This e-mail message and its attachments (if any) are intended solely for the use of the addressee hereof. In addition, this message and any attachments may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply e-mail and delete this message from your system.

---

**From:** Adam Runsdorf
**Sent:** Monday, March 1, 2021 9:48 AM
**To:** 'JanCarlo.R.Videna@usdoj.gov' <JanCarlo.R.Videna@usdoj.gov>
**Cc:** 'lynda.F.Eleazer@usdoj.gov' <lynda.F.Eleazer@usdoj.gov>; 'Heard, Joffrey G' <Joffrey.G.Heard@usdoj.gov>; Gabriela Sanchez <gsanchez@wdsrx.com>
**Subject:** Re: Woodfield Distribution, LLC -

JanCarlo,

Regarding Woodfield's pending application to have Pentobarbital Sodium (CII) added to our existing importer registration (#RW0413548), in January 2021, letters were sent to the domestic manufacturers

of Pentobarbital Sodium in an effort to demonstrate that Pentobarbital Sodium is not available domestically for the intended use.

The domestic manufacturers were determined by reviewing the Notices of Registrations on the DEA website: https://www.deadiversion.usdoj.gov/drugreg/nor/manufacturers/index.html

Attached are:

1) Copies of the letters
2) Delivery confirmations

As of 3/1/ 21, we have not heard from any of the domestic manufacturers.

Please let me know if you require anything else. Otherwise, we respectfully request that notice of our application be published in the Federal Register as soon as possible.

Thank you for your assistance in this matter.

Regards,

Adam

**Adam Runsdorf, President**
Woodfield Distribution, LLC
951 Clint Moore Road, Suite A
Boca Raton, FL 33487
Phone: (561) 998-3885 x 201
Mobile (561) 213-0701
Fax: (561) 998-3886
Email: arunsdorf@wdsrx.com

This e-mail message and its attachments (if any) are intended solely for the use of the addressee hereof. In addition, this message and any attachments may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply e-mail and delete this message from your system.

Exhibit 16
Proof of 2020 Application /
Email to DEA dated 3/12/2021

**Matt Larson**

---

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Friday, March 12, 2021 10:09 AM
**To:** 'Barron, Charlotte D.'; 'Eleazer, Lynda F.'
**Subject:** FW: Re: Woodfield Distribution, LLC -
**Attachments:** Woodfield Distribution, LLC - Pentobarbital Sodium FINAL 2021-01-27 SIGNED.pdf; Woodfield Distribution LLC - Pentobarbital Sodium 2021-01-27 Tracking.pdf

Hi Ms. Barron and Ms. Eleazer,

Recall, POM Pharma has an application to import Pentobarbital Sodium pending with the DEA since Dec. 2017 ("**POM's 2017 FL Application**").

Separately, POM Pharma has requested that its 3PL (Woodfield Distribution) import Pentobarbital Sodium on behalf of POM Pharma ("**Woodfield's Pento Application**"). In an effort to demonstrate to the DEA that Pentobarbital Sodium is not available domestically, Woodfield sent the attached letters to the registered domestic manufacturers of Pentobarbital Sodium and did not receive any replies. Please see below and attached.

If/when "Woodfield's Pento Application" to import Pentobarbital Sodium is approved and a subsequent registration/quota is granted, POM Pharma is willing to withdraw its "POM 2017 FL Application." However, in the interim, please continue to review the POM 2017 FL Application without delay. Related, as we have not received a substantive communication from the DEA since June 2020 regarding POM's 2017 FL Application – would it be possible to please provide us with the DEA's specific issues with POM's 2017 FL Application (I'm also more than happy to setup a Zoom call to discuss any outstanding issues; I think this would be far more efficient for all involved than shuffling formal letters back and forth).

Thank you for your continued efforts and help.

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

---

**From:** Adam Runsdorf <arunsdorf@wdsrx.com>
**Sent:** Thursday, March 11, 2021 12:03 PM
**To:** Matt Larson <matt@pompharma.org>
**Subject:** FW: Re: Woodfield Distribution, LLC -

See Below.

Regards,

Adam

**Adam Runsdorf, President**
Woodfield Distribution, LLC
951 Clint Moore Road, Suite A
Boca Raton, FL 33487
Phone: (561) 998-3885 x 201
Mobile (561) 213-0701
Fax: (561) 998-3886
Email: arunsdorf@wdsrx.com

This e-mail message and its attachments (if any) are intended solely for the use of the addressee hereof. In addition, this message and any attachments may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply e-mail and delete this message from your system.

---

**From:** Adam Runsdorf
**Sent:** Monday, March 1, 2021 9:48 AM
**To:** 'JanCarlo.R.Videna@usdoj.gov' <JanCarlo.R.Videna@usdoj.gov>
**Cc:** 'lynda.F.Eleazer@usdoj.gov' <lynda.F.Eleazer@usdoj.gov>; 'Heard, Joffrey G' <Joffrey.G.Heard@usdoj.gov>; Gabriela Sanchez <gsanchez@wdsrx.com>
**Subject:** Re: Woodfield Distribution, LLC -

JanCarlo,

Regarding Woodfield's pending application to have Pentobarbital Sodium (CII) added to our existing importer registration (#RW04413548), in January 2021, letters were sent to the domestic manufacturers of Pentobarbital Sodium in an effort to demonstrate that Pentobarbital Sodium is not available domestically for the intended use.

The domestic manufacturers were determined by reviewing the Notices of Registrations on the DEA website: https://www.deadiversion.usdoj.gov/drugreg/nor/manufacturers/index.html

Attached are:
1) Copies of the letters
2) Delivery confirmations

As of 3/1/ 21, we have not heard from any of the domestic manufacturers.

Please let me know if you require anything else. Otherwise, we respectfully request that notice of our application be published in the Federal Register as soon as possible.

Thank you for your assistance in this matter.

Regards,

Adam

**Adam Runsdorf, President**
Woodfield Distribution, LLC
951 Clint Moore Road, Suite A
Boca Raton, FL 33487
Phone: (561) 998-3885 x 201
Mobile (561) 213-0701
Fax: (561) 998-3886
Email: arunsdorf@wdsrx.com

This e-mail message and its attachments (if any) are intended solely for the use of the addressee hereof. In addition, this message and any attachments may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply e-mail and delete this message from your system.

Exhibit 17
Proof of 2020 Application /
Email to DEA dated 3/15/2021

## Matt Larson

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Monday, March 15, 2021 1:27 PM
**To:** 'Barron, Charlotte D.'
**Cc:** 'ATMartin2@dea.usdoj.gov'
**Subject:** POM Pharma / Denver Importer Application
**Attachments:** POM Pharma - DEA Form 225 - Denver - Application 2021-03-14.pdf; POM Pharma - DEA Form 225 - Denver - Importer Questionnaire 2021-03-15.pdf; POM Pharma - Overview - Congress 2021-03-14.pdf

Hi Ms. Barron,

POM Pharma recently obtained a CO wholesaler license and this past weekend POM completed a DEA application to import Pentobarbital Sodium (a CII) at our Denver facility.

Attached are:
1) Application
2) Questionnaire

With this latest application for POM's Denver facility, POM now has 3 independent (but parallel) efforts running with the DEA in our quest to import Pentobarbital Sodium. Attached is an overview that summarizes these 3 efforts – of which you are already familiar with the first 2 (i.e., (1) POM's 2017 application; and (2) POM's 3PL's request to have Pentobarbital Sodium added to its existing registration on behalf of POM).

Please let me know if you require anything else to process this latest application for POM's Denver facility.

Thank you for your continued help.

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

P.O.M. Pharma

Peace of Mind Pharmaceuticals LLC

3 Parallel DEA Efforts

Pentobarbital Sodium is the drug of choice for use in medical aid in dying (MAID) and P.O.M. Pharma is pursuing 3 parallel import efforts with the DEA – each an attempt to proactively respond to issues/concerns of the DEA that P.O.M. Pharma perceives.

1. "P.O.M. Pharma – 2017 Application": P.O.M. Pharma's first application was submitted in December 2017. This application contemplates P.O.M. Pharma relying on its 3PL to satisfy certain requirements of the Controlled Substances Act (CSA).

   The FDA defines a 3PL, or Third-Party Logistics Provider, as *"… an entity that provides or coordinates warehousing, or other logistics services of a product in interstate commerce on behalf of a manufacturer, wholesale distributor, or dispenser of a product, but does not take ownership of the product, nor have responsibility to direct the sale or disposition of the product."*[4]

   In the summer of 2019, the DEA Diversion Program Manager for the Miami Field Office confirmed to P.O.M. Pharma that P.O.M. Pharma and its 3PL had passed the DEA's field inspection. However, since then the 2017 Application has been stalled.

2. "P.O.M. Pharma's 3PL – 2020 Application": P.O.M. Pharma perceives the principal area of disagreement with the DEA regarding its 2017 Application to be whether P.O.M. Pharma may rely on its 3PL to satisfy certain requirements of the CSA. P.O.M. Pharma's position is that:
   - The CSA explicitly recognizes and permits the reliance on third parties to act on behalf of a registrant;
   - Nowhere in the CSA does it explicitly or implicitly prohibit reliance on third-parties to act on behalf of a registrant; and
   - Nowhere in the CSA does it explicitly or implicitly require a registrant to own or lease its own physical secure area, rather than contract for one (e.g., through a 3PL).

   P.O.M. Pharma has made several requests for the DEA to issue a formal order to show cause pursuant to 21 CFR §1301.37 so that P.O.M. Pharma may exercise its judicial rights and request a hearing pursuant to 21 CFR §1301.37. To date, no order to show cause has been provided by the DEA.

   Notwithstanding, in an attempt to overcome the foregoing perceived issue of the DEA with P.O.M. Pharma's 2017 Application, in 2020 P.O.M. Pharma requested that its 3PL pursue adding Pentobarbital Sodium to the 3PL's existing importer registration and the 3PL's request is pending with the DEA.

3. "P.O.M. Pharma – 2021 Application": In an effort to eliminate the 3PL altogether (at least at the importation level), P.O.M. Pharma recently obtained a Colorado state license for a small Denver facility that P.O.M. Pharma maintains. A Colorado state license is a prerequisite to submitting an application with the DEA, and P.O.M. Pharma applied for a DEA importer's registration for this Denver facility in March 2021.

[4] 21 USC §360eee(22)

Exhibit 18
Proof of 2020 Application /
Email to DEA dated 4/2/2021

**Matt Larson**

---

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Friday, April 2, 2021 10:17 AM
**To:** 'JanCarlo.R.Videna@usdoj.gov'
**Subject:** FW: POM Pharma / DEA Follow-Up

Hi JanCarlo,

Please see below. POM Pharma has requested that our 3PL, Woodfield, import Pentobarbital Sodium on our behalf.

Woodfield previously requested on 3/1 that Pentobarbital Sodium be placed on its registration. Do you have an update regarding the status of this request?

Thank you for you assistance.

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

---

**From:** Adam Runsdorf <arunsdorf@wdsrx.com>
**Sent:** Friday, April 2, 2021 9:48 AM
**To:** Matt Larson <matt@pompharma.org>; Larry Hotz <lhotz@wdsrx.com>; Gabriela Sanchez <gsanchez@wdsrx.com>
**Subject:** RE: POM Pharma / DEA Follow-Up

Matt,

We have not received a response from the DEA in regard to this matter. You are certainly welcome to contact this individual directly or the West Palm Beach, FL District Office if you prefer.

Regards,

Adam

**Adam Runsdorf, President**
Woodfield Distribution, LLC
951 Clint Moore Road, Suite A
Boca Raton, FL 33487
Phone: (561) 998-3885 x 201
Mobile (561) 213-0701
Fax: (561) 998-3886

Email: arunsdorf@wdsrx.com

This e-mail message and its attachments (if any) are intended solely for the use of the addressee hereof. In addition, this message and any attachments may contain information that is confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient of this message, you are prohibited from reading, disclosing, reproducing, distributing, disseminating or otherwise using this transmission. If you have received this message in error, please promptly notify the sender by reply e-mail and delete this message from your system.

---

**From:** Matt Larson <matt@pompharma.org>
**Sent:** Friday, April 2, 2021 11:37 AM
**To:** Adam Runsdorf <arunsdorf@wdsrx.com>; Larry Hotz <lhotz@wdsrx.com>; Gabriela Sanchez <gsanchez@wdsrx.com>
**Subject:** RE: POM Pharma / DEA Follow-Up

Hi Adam, Larry and Gabriela,

I had a reminder pop-up in my calendar to reach out - any updates or feedback from JanCarlo regarding your prior request to add Pentobarbital Sodium (CII) to your registration?

Thanks for the continued help.

Matt

Exhibit 19
Proof of 2020 Application /
Email to DEA dated 4/5/2021

## Matt Larson

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Monday, April 5, 2021 12:15 PM
**To:** 'Eleazer, Lynda F.'; 'Barron, Charlotte D.'; 'JanCarlo.R.Videna@usdoj.gov'; 'william.t.mcdermott@usdoj.gov'; 'matthew.j.strait@usdoj.gov'; 'jessica.thurman@dea.gov'; 'Heard, Joffrey G'
**Cc:** 'Murphy, Jack'; 'Oatman-Gardner, Annie (Bennet)'; 'Rebecca_Nathanson@wyden.senate.gov'; 'Martha_Cramer@blumenauer.house.gov'; 'Julia Pomeroy'; 'Martha_Cramer@mail.house.gov'; 'Anthony Hinojosa'; 'Barbara Coombs Lee'; 'Charmaine Manansala'; 'esoto@rabengroup.com'
**Subject:** Pentobarbital Sodium (CII) / POM Pharma
**Attachments:** POM Pharma - Overview - Congress 2021-03-14.pdf; POM Pharma - Overview - 2021.pdf; POM Pharma LLC - DEA Form 225 - 2020-06-23.pdf; Woodfield - POM Inquiry Authorization 2021-04-05.pdf; Woodfield - Parallel Pento - DEA 2020-03-11.pdf

Hello All,

POM Pharma now has 3 parallel efforts running with the DEA in its ongoing pursuit to import Pentobarbital Sodium (CII) for medical aid in dying (MAID). See attached.

**Regarding POM's 2017 Application (Effort #1)**: We are quickly approaching one full year since POM's 6/23/20 letter (see attached), and POM has never received a formal response or substantive update. It has been nearly 2 years since POM was informed by Susan Langston, then Diversion Program Manager for the Miami Field Division, that POM had passed its field inspection. In addition to countless requests for a formal response to the 6/23/20 letter or a substantive update, POM has pleaded with the DEA to simply provide an order to show cause (denial) so that we can pursue our judicial remedies. *Please provide a formal response to the 6/23/20 letter, or an order to show cause(denial).*

**Regarding the 2020 Request of POM's 3PL Woodfield Distribution (Effort #2)**: Woodfield has authorized POM to inquire about the status of its request to add Pentobarbital Sodium to its existing importer registration. See attached. Over a month ago, Woodfield provided copies of various letters to the DEA to demonstrate that Pentobarbital Sodium is not available domestically in the necessary quantities and for the intended purpose of MAID. See attached. *Please indicate what else, if anything, is necessary before the DEA will publish Woodfield's request in the Federal Register?*

Thank you.

Matt

Matt Larson, Esq.
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

P.O.M. Pharma

Peace of Mind Pharmaceuticals LLC

3 Parallel DEA Efforts

Pentobarbital Sodium is the drug of choice for use in medical aid in dying (MAID) and P.O.M. Pharma is pursuing 3 parallel import efforts with the DEA – each an attempt to proactively respond to issues/concerns of the DEA that P.O.M. Pharma perceives.

1. "P.O.M. Pharma – 2017 Application": P.O.M. Pharma's first application was submitted in December 2017. This application contemplates P.O.M. Pharma relying on its 3PL to satisfy certain requirements of the Controlled Substances Act (CSA).

   The FDA defines a 3PL, or Third-Party Logistics Provider, as *"… an entity that provides or coordinates warehousing, or other logistics services of a product in interstate commerce on behalf of a manufacturer, wholesale distributor, or dispenser of a product, but does not take ownership of the product, nor have responsibility to direct the sale or disposition of the product."*[4]

   In the summer of 2019, the DEA Diversion Program Manager for the Miami Field Office confirmed to P.O.M. Pharma that P.O.M. Pharma and its 3PL had passed the DEA's field inspection. However, since then the 2017 Application has been stalled.

2. "P.O.M. Pharma's 3PL – 2020 Application": P.O.M. Pharma perceives the principal area of disagreement with the DEA regarding its 2017 Application to be whether P.O.M. Pharma may rely on its 3PL to satisfy certain requirements of the CSA. P.O.M. Pharma's position is that:
   - The CSA explicitly recognizes and permits the reliance on third parties to act on behalf of a registrant;
   - Nowhere in the CSA does it explicitly or implicitly prohibit reliance on third-parties to act on behalf of a registrant; and
   - Nowhere in the CSA does it explicitly or implicitly require a registrant to own or lease its own physical secure area, rather than contract for one (e.g., through a 3PL).

   P.O.M. Pharma has made several requests for the DEA to issue a formal order to show cause pursuant to 21 CFR §1301.37 so that P.O.M. Pharma may exercise its judicial rights and request a hearing pursuant to 21 CFR §1301.37. To date, no order to show cause has been provided by the DEA.

   Notwithstanding, in an attempt to overcome the foregoing perceived issue of the DEA with P.O.M. Pharma's 2017 Application, in 2020 P.O.M. Pharma requested that its 3PL pursue adding Pentobarbital Sodium to the 3PL's existing importer registration and the 3PL's request is pending with the DEA.

3. "P.O.M. Pharma – 2021 Application": In an effort to eliminate the 3PL altogether (at least at the importation level), P.O.M. Pharma recently obtained a Colorado state license for a small Denver facility that P.O.M. Pharma maintains. A Colorado state license is a prerequisite to submitting an application with the DEA, and P.O.M. Pharma applied for a DEA importer's registration for this Denver facility in March 2021.

[4] 21 USC §360eee(22)

Exhibit 20
Proof of 2020 Application /
Email to DEA dated 5/5/2021

## Matt Larson

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Thursday, May 6, 2021 12:33 PM
**To:** 'Eleazer, Lynda F.'; 'Barron, Charlotte D.'
**Cc:** 'Murphy, Jack'; 'Oatman-Gardner, Annie (Bennet)'; 'Rebecca_Nathanson@wyden.senate.gov'; 'Martha_Cramer@blumenauer.house.gov'; 'Julia Pomeroy'; 'Martha_Cramer@mail.house.gov'; 'Anthony Hinojosa'; 'Barbara Coombs Lee'; 'Charmaine Manansala'; 'esoto@rabengroup.com'; 'JanCarlo.R.Videna@usdoj.gov'; 'william.t.mcdermott@usdoj.gov'; 'matthew.j.strait@usdoj.gov'; 'jessica.thurman@dea.gov'; 'Heard, Joffrey G'; 'Angie.K.Pickrel@usdoj.gov'; 'McCormick, Daniel J.'; 'Preston.Grubbs@dea.gov'; 'Christopher.Evans@dea.gov'; 'katie.a.laughery@usdoj.gov'; 'jthurman@dea.gov'
**Subject:** RE: Pentobarbital Sodium (CII) / POM Pharma
**Attachments:** POM Pharma - Overview - Congress 2021-03-14.pdf; POM Pharma - Overview - 2021.pdf; POM Pharma LLC - DEA Form 225 - 2020-06-23.pdf; Woodfield - POM Inquiry Authorization 2021-04-05.pdf; Woodfield - Parallel Pento - DEA 2020-03-11.pdf

Hello Ms. Barron and Ms. Eleazer,

I did not receive a DEA response to my recent 4/5/21 email.

Recall, POM Pharma has 3 parallel applications pending with the DEA – any one of which when approved by the DEA would allow the importation of Pentobarbital (CII) for medical aid in dying (MAID). See attached.

**POM's 2017 Application (Parallel Application #1)**: It has been nearly a year since POM sent it 6/23/20 response – and no substantive response has been provided by the DEA. It has been two years this May since POM met with the Diversion Program Manager for the Miami Field Division in May 2019 and was told that POM had passed its field inspection. *Please provide a formal response to the 6/23/20 letter, or an order to show cause(denial).*

**2020 Application by POM's 3PL Woodfield Distribution (Parallel Application #2)**: Woodfield has authorized POM to inquire about the status of its request to add Pentobarbital Sodium to Woodfield's existing importer registration. See attached. It has been over two months since Woodfield provided copies of various letters to the DEA to demonstrate that Pentobarbital Sodium is not available domestically in the necessary quantities and for the intended purpose of MAID. See attached. *Please provide a status update of this request*.

**POM's 2021 Application (Parallel Application #3)**: POM expects to receive delivery of its safe at its Denver facility this May and is working with the Denver DEA to coordinate a field inspection.

Thank you.

Matt

Matt Larson, Esq.
P.O.M. Pharma
1.303.825.0108 (O)

1.303.808.6997 (C)
www.POMpharma.org

---

**From:** Matt Larson <Matt@POMpharma.org>
**Sent:** Monday, April 5, 2021 12:15 PM
**To:** 'Eleazer, Lynda F.' <Lynda.F.Eleazer@usdoj.gov>; 'Barron, Charlotte D.' <Charlotte.D.Barron@usdoj.gov>; 'JanCarlo.R.Videna@usdoj.gov' <JanCarlo.R.Videna@usdoj.gov>; 'william.t.mcdermott@usdoj.gov' <william.t.mcdermott@usdoj.gov>; 'matthew.j.strait@usdoj.gov' <matthew.j.strait@usdoj.gov>; 'jessica.thurman@dea.gov' <jessica.thurman@dea.gov>; 'Heard, Joffrey G' <Joffrey.G.Heard@usdoj.gov>
**Cc:** 'Murphy, Jack' <Jack.Murphy@mail.house.gov>; 'Oatman-Gardner, Annie (Bennet)' <Annie_Oatman-Gardner@bennet.senate.gov>; 'Rebecca_Nathanson@wyden.senate.gov' <Rebecca_Nathanson@wyden.senate.gov>; 'Martha_Cramer@blumenauer.house.gov' <Martha_Cramer@blumenauer.house.gov>; 'Julia Pomeroy' <Julia.Pomeroy@mail.house.gov>; 'Martha_Cramer@mail.house.gov' <Martha_Cramer@mail.house.gov>; 'Anthony Hinojosa' <ahinojosa@compassionandchoices.org>; 'Barbara Coombs Lee' <bcl@compassionandchoices.org>; 'Charmaine Manansala' <cmanansala@compassionandchoices.org>; 'esoto@rabengroup.com' <esoto@rabengroup.com>
**Subject:** Pentobarbital Sodium (CII) / POM Pharma

Hello All,

POM Pharma now has 3 parallel efforts running with the DEA in its ongoing pursuit to import Pentobarbital Sodium (CII) for medical aid in dying (MAID). See attached.

**Regarding POM's 2017 Application (Effort #1)**: We are quickly approaching one full year since POM's 6/23/20 letter (see attached), and POM has never received a formal response or substantive update. It has been nearly 2 years since POM was informed by Susan Langston, then Diversion Program Manager for the Miami Field Division, that POM had passed its field inspection. In addition to countless requests for a formal response to the 6/23/20 letter or a substantive update, POM has pleaded with the DEA to simply provide an order to show cause (denial) so that we can pursue our judicial remedies. *Please provide a formal response to the 6/23/20 letter, or an order to show cause(denial).*

**Regarding the 2020 Request of POM's 3PL Woodfield Distribution (Effort #2)**: Woodfield has authorized POM to inquire about the status of its request to add Pentobarbital Sodium to its existing importer registration. See attached. Over a month ago, Woodfield provided copies of various letters to the DEA to demonstrate that Pentobarbital Sodium is not available domestically in the necessary quantities and for the intended purpose of MAID. See attached. *Please indicate what else, if anything, is necessary before the DEA will publish Woodfield's request in the Federal Register?*

Thank you.

Matt

Matt Larson, Esq.
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

P.O.M. Pharma

Peace of Mind Pharmaceuticals LLC

3 Parallel DEA Efforts

Pentobarbital Sodium is the drug of choice for use in medical aid in dying (MAID) and P.O.M. Pharma is pursuing 3 parallel import efforts with the DEA – each an attempt to proactively respond to issues/concerns of the DEA that P.O.M. Pharma perceives.

1. "P.O.M. Pharma – 2017 Application": P.O.M. Pharma's first application was submitted in December 2017. This application contemplates P.O.M. Pharma relying on its 3PL to satisfy certain requirements of the Controlled Substances Act (CSA).

   The FDA defines a 3PL, or Third-Party Logistics Provider, as *"… an entity that provides or coordinates warehousing, or other logistics services of a product in interstate commerce on behalf of a manufacturer, wholesale distributor, or dispenser of a product, but does not take ownership of the product, nor have responsibility to direct the sale or disposition of the product."*[4]

   In the summer of 2019, the DEA Diversion Program Manager for the Miami Field Office confirmed to P.O.M. Pharma that P.O.M. Pharma and its 3PL had passed the DEA's field inspection. However, since then the 2017 Application has been stalled.

2. "P.O.M. Pharma's 3PL – 2020 Application": P.O.M. Pharma perceives the principal area of disagreement with the DEA regarding its 2017 Application to be whether P.O.M. Pharma may rely on its 3PL to satisfy certain requirements of the CSA. P.O.M. Pharma's position is that:
   - The CSA explicitly recognizes and permits the reliance on third parties to act on behalf of a registrant;
   - Nowhere in the CSA does it explicitly or implicitly prohibit reliance on third-parties to act on behalf of a registrant; and
   - Nowhere in the CSA does it explicitly or implicitly require a registrant to own or lease its own physical secure area, rather than contract for one (e.g., through a 3PL).

   P.O.M. Pharma has made several requests for the DEA to issue a formal order to show cause pursuant to 21 CFR §1301.37 so that P.O.M. Pharma may exercise its judicial rights and request a hearing pursuant to 21 CFR §1301.37. To date, no order to show cause has been provided by the DEA.

   Notwithstanding, in an attempt to overcome the foregoing perceived issue of the DEA with P.O.M. Pharma's 2017 Application, in 2020 P.O.M. Pharma requested that its 3PL pursue adding Pentobarbital Sodium to the 3PL's existing importer registration and the 3PL's request is pending with the DEA.

3. "P.O.M. Pharma – 2021 Application": In an effort to eliminate the 3PL altogether (at least at the importation level), P.O.M. Pharma recently obtained a Colorado state license for a small Denver facility that P.O.M. Pharma maintains. A Colorado state license is a prerequisite to submitting an application with the DEA, and P.O.M. Pharma applied for a DEA importer's registration for this Denver facility in March 2021.

---

[4] 21 USC §360eee(22)

Exhibit 21
Proof of 2020 Application /
Letter to DEA dated 11/12/2021

Hogan Lovells

Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
T +1 202 637 5600
F +1 202 637 5910
www.hoganlovells.com

November 12, 2021

**By Electronic Mail and Federal Express**

Lynda Eleazer, Group Supervisor
U.S. Department of Justice
Drug Enforcement Administration
West Palm Beach District Office
444 West Railroad Avenue, Suite 500
West Palm Beach, FL 33401
Lynda.F.Eleazer@usdoj.gov

Alfredo Gonzalez, Diversion Investigator
U.S. Department of Justice
Drug Enforcement Administration
Denver Division Office
12154 East Easter Ave
Centennial, CO 80112
Alfredo.Gonzalez@usdoj.gov

***Re: Peace of Mind Pharmaceuticals, LLC***
***DEA Form 225 Importer Registration Applications***

Dear Ms. Eleazer and Mr. Gonzalez:

On behalf of our client, Peace of Mind Pharmaceuticals, LLC (POM Pharma or the organization), I am writing with regard to the following pending applications for DEA registration, each of which seeks authorization to import Pentobarbital Sodium bulk drug substance, or active pharmaceutical ingredient (Pentobarbital Sodium API), a Schedule II non-narcotic controlled substance:

- POM Pharma's application for registration of a warehouse facility in Boca Raton, Florida to permit importation of Schedule II non-narcotic controlled substances. Originally filed on December 8, 2017, the application was assigned DEA Control number W1123882J (2017 POM FL Application);
- An application from Woodfield Distribution, LLC (Woodfield) to add Pentobarbital Sodium to an existing DEA Importer registration for a warehouse facility in Boca Raton, Florida (DEA #RW0413548). The application was originally filed June 9, 2020 (2020 Woodfield Application);
- POM Pharma's application for registration to import Schedule II non-narcotic controlled substances for a warehouse facility in Denver, Colorado. Originally filed on March 14, 2021, it was assigned DEA Control number W21024430J (2021 POM CO Application).

Hogan Lovells US LLP is a limited liability partnership registered in the District of Columbia. "Hogan Lovells" is an international legal practice that includes Hogan Lovells US LLP and Hogan Lovells International LLP, with offices in: Alicante Amsterdam Baltimore Beijing Birmingham Boston Brussels Colorado Springs Denver Dubai Dusseldorf Frankfurt Hamburg Hanoi Ho Chi Minh City Hong Kong Houston Johannesburg London Los Angeles Luxembourg Madrid Mexico City Miami Milan Minneapolis Monterrey Moscow Munich New York Northern Virginia Paris Perth Philadelphia Rome San Francisco São Paulo Shanghai Silicon Valley Singapore Sydney Tokyo Warsaw Washington, D.C. Associated Offices: Budapest Jakarta Riyadh Shanghai FTZ Ulaanbaatar. Business Service Centers: Johannesburg Louisville. Legal Services Center: Berlin. For more information see www.hoganlovells.com

The purpose of this letter is to request the withdrawal of the 2017 POM FL Application and request action on the 2020 Woodfield Application and the 2021 POM CO Application.

## 1. POM Pharma's Mission

POM Pharma is a non-profit specialty pharmaceutical organization seeking to offer peace of mind to terminally ill patients by making available Pentobarbitol Sodium for use in medical aid in dying (MAID) in those states where it is permitted.[1] In practice, MAID involves a decision about medical assistance between a licensed healthcare provider and his/her terminally ill patient. The healthcare provider issues a written prescription to an individual patient for a specific prescription drug or drugs, such as Pentobarbital Sodium, which the patient can then use to chart their end-of-life journey consistent with state law. A non-profit organization, POM Pharma's purpose is to make available prescription drugs that are safe and effective for this use. POM Pharma does this by supplying licensed pharmacies with Pentobarbital Sodium API for compounding pursuant to a prescription for an individual patient.

Although state law governs the actions associated with MAID,[2] those who handle, import, or distribute controlled substances associated with MAID must comply with state and federal laws and regulation regarding controlled substances. It is for that reason that POM Pharma is seeking a DEA registration to import Pentobarbitol Sodium API.

## 2. Need to Import Pentobarbital Sodium API

As DEA is aware, Pentobarbital Sodium is frequently in shortage because of manufacturing and global supply chain issues. This is exacerbated by the reluctance of U.S. drug manufacturers and distributors to supply Pentobarbital Sodium because of the small and infrequent shipments requested and/or a concern about the use in executions. This lack of domestic supply has led POM Pharma to seek an importer registration, in order to obtain the estimated 40 to 50 kilograms of Pentobarbital Sodium API necessary to fulfill requests for the drug for use in MAID each year.

On December 7, 2017, POM Pharma entered into a written supply agreement with [redacted]. [redacted] manufacturers a number of products, ingredients and intermediates, including Pentobarbital Sodium API, and the company's manufacturing facility has been inspected by FDA and regulatory authorities from the European Union, Japan, and [redacted]. We understand that [redacted] is prepared to start manufacturing Pentobarbital Sodium API to fulfill POM Pharma's requests as soon as an appropriate importer license is in place.

---

1 MAID is permitted in ten states and the District of Columbia. Ore. Rev. Stat. 127.800, et seq. (*Oregon Death with Dignity Act*); Rev. Code of Wash. 70.245, *et seq.* (*Washington Death with Dignity Act*); *Baxter v. State,* 224 P.3d 1211 (Mont. 2009); 18 Ver. Stat. Ann. 5281, *et seq.* (*Vermont Patient Choice and Control at the End of Life Act*); Cal. Health & Safety Code 443, *et seq.* (*California End of Life Option Act*); Col. Rev. Code 25-48-101, *et seq.* (*Colorado End of Life Options Act*); D.C. Law 21-182 (*D.C. Death with Dignity Act*); Haw. Rev. Stat. 327L (*Hawai'i Our Care, Our Choice Act*); N.J. Rev. Stat. 26:16-1, *et seq.* (*New Jersey Medical Aid in Dying for the Terminally Ill Act*); 22 Me. Rev. State. 2140, *et seq.* (*Maine Death with Dignity Act*); N.M. Stat. 24-7C (*New Mexico Elizabeth Whitefield End-of-Life Options Act*). See https://compassionandchoices.org/resource/states-or-territories-where-medical-aid-in-dying-is-authorized/.

2 The United States Supreme Court has consistently permitted states to either permit or to ban the practice of physician-assisted suicide. *Gonzales v. Oregon*, 546 U.S. 243 (2006); *Washington v. Glucksberg*, 521 U.S. 702 (1997); *Vacco v. Quill*, 521 U.S. 793 (1997). In *Gonzales v. Oregon*, the Court held that the CSA did not prohibit physicians from prescribing controlled substances in connection with medical-aid-in-dying laws and reaffirmed that the practice of medicine is controlled by the states. 546 U.S. at 272-75.

**3. POM Pharma's Updated Approach and Plan**

DEA's interactions with POM Pharma regarding the applications have provided useful information to help POM Pharma understand the steps to appropriately import the drug and how best to communicate with DEA about what POM Pharma and its partners have done and will be doing to meet applicable standards. POM Pharma now also recognizes that the most efficient path forward is to withdraw the 2017 POM FL Application and focus on the 2020 Woodfield Application and 2021 POM CO Application. Thus, we respectfully request the withdrawal of the 2017 POM FL Application.

**(a) Agreement with Woodfield to Import and Distribute Product**

POM Pharma has engaged Woodfield to import, store and handle, and distribute Pentobarbital Sodium API for pharmacy compounding done pursuant to a written prescription by a licensed healthcare provider. Under this arrangement, POM Pharma would not physically handle the product; POM Pharma has come to recognize that it therefore would not require a DEA registration to meet the organization's objectives, as long as Woodfield is appropriately registered.[3] Importantly, Woodfield is already authorized by DEA to import Schedule II controlled substances, and maintains procedures and personnel with required training and experience to comply with DEA registration, inventory, record keeping, and security requirements and is awaiting approval of the pending update to its registration to include Pentobarbital Sodium.

Provided Woodfield's pending application is granted, the POM Pharma / Woodfield relationship will work as follows:

- Woodfield will import Pentobarbital Sodium API. Woodfield will be responsible for completing DEA-357 Forms required to permit the importation for each shipment, ensuring that all records are maintained as required by DEA regulation.

- Woodfield will physically receive shipments of Pentobarbital Sodium API. The shipments of the product and associated records would be maintained by Woodfield at its DEA-registered Boca Raton warehouse. As a DEA-registered Importer for Schedule II controlled substances, Woodfield will store and secure the Pentobarbital Sodium API shipments in accordance with the procedures and standards associated with the Woodfield controlled substance compliance program.

- POM Pharma will direct the sale and Woodfield will distribute at POM Pharma's direction Pentobarbital Sodium API to state-licensed compounding pharmacies to fill legitimate prescriptions issued by licensed healthcare providers. Pentobarbital Sodium API shipments will be sent only to compounding pharmacies in states where MAID practices are permitted under state law. Woodfield will be responsible for completing and maintaining DEA Form 222s for distribution of the product and adhering to all other documentation and reporting obligations.

3 Although the Florida Department of Business and Professional Regulation has issued POM Pharma a virtual manufacturer license, the company is no longer seeking a DEA Importer registration associated with that state license, because Woodfield will perform all relevant DEA-regulated activities associated with importing and distributing Pentobarbital Sodium API.

To facilitate this arrangement, Woodfield on or around June 9, 2020, submitted an application to add Pentobarbital Sodium API to the company's existing DEA Importer registration (DEA #RW0413548), which is associated with the company's DEA-registered warehouse facility at 951 Clint Moore Road, Suite A, Boca Raton, FL 33487. POM Pharma respectfully asks that DEA expeditiously process and approve the pending Woodfield application.

**(b) DEA Registration for POM Pharma's Denver Facility**

Through its partnership with Woodfield, POM Pharma expects to efficiently begin operations to support state authorized MAID activities through Woodfield's warehousing and distribution services and established DEA compliance program and infrastructure. However, to sustain operations in the long term or in the event that Woodfield's application is not granted, POM Pharma is seeking an Importer registration for its Denver facility, at [redacted]. To that end, POM Pharma respectfully requests that DEA process and approve the 2021 POM CO Application (DEA Control number W21024430J), which was originally filed on March 14, 2021.

In this regard, POM Pharma informs DEA of the following:

- The Colorado State Board of Pharmacy on February 24, 2021 issued POM Pharma an In-State Wholesaler of Prescription Drugs license (CO License number WHI.0006122) with an expiration date of October 31, 2022.
- Following submission of the 2021 POM CO Application, POM Pharma submitted responses to DEA's importer questionnaire form.
- On June 23, 2021, DEA inspected the Denver facility. As follow-up to the DEA site inspection, POM Pharma provided the following records and information to support the application:
    - Lease and building floor plan
    - State license, permits
    - Supplier contact information
    - Physical security: safe specifications and alarm specifications
    - POM Pharma organizational documents
    - Information for Matthew R. Larson, Co-Founder and President of POM Pharma
    - Information for Peter J. Rice, Chief Pharmacy Officer of POM Pharma

In addition, POM Pharma has provided copies of the following standard operating procedures to DEA:

| Standard Operating Procedure (SOP) Title | Number | Revision | Effective Date |
|---|---|---|---|
| Licenses, Registrations & Permits | POM/DEN 01 | 1 | 7/20/2021 |
| APIs / Controlled Substances | POM/DEN 02 | 1 | 7/20/2021 |
| Plan of Distribution | POM/DEN 03 | 1 | 7/20/2021 |
| Hours of Operation | POM/DEN 04 | 1 | 7/20/2021 |
| Security Systems | POM/DEN 05 | 1 | 7/20/2021 |
| Receipt of Product | POM/DEN 06 | 1 | 7/20/2021 |
| Storage of Product | POM/DEN 07 | 1 | 7/20/2021 |
| Authorized Purchasers / Customers | POM/DEN 08 | 1 | 7/20/2021 |
| Picking, Checking, Packing and Shipping | POM/DEN 09 | 1 | 7/20/2021 |
| Unusable Product | POM/DEN 10 | 1 | 7/20/2021 |
| Returns/Collector | POM/DEN 11 | 1 | 7/20/2021 |
| Product Testing | POM/DEN 12 | 1 | 7/20/2021 |
| Recalls & Withdrawals | POM/DEN 13 | 1 | 7/20/2021 |
| Product Samples | POM/DEN 14 | 1 | 7/20/2021 |
| Personnel | POM/DEN 15 | 1 | 7/20/2021 |
| Suspicious Orders | POM/DEN 16 | 1 | 7/20/2021 |
| Facility | POM/DEN 17 | 1 | 7/20/2021 |
| Disaster Preparedness & Recovery | POM/DEN 18 | 1 | 7/20/2021 |
| Records & Inventories | POM/DEN 19 | 1 | 7/20/2021 |
| Reporting Requirements | POM/DEN 20 | 1 | 7/20/2021 |
| Annual Review / SOP Revisions | POM/DEN 21 | 1 | 7/20/2021 |

POM Pharma is not aware that any additional information is needed to satisfy the requirements for an importer registration for POM Pharma's Colorado location.

*  *  *

POM Pharma appreciates the time and attention DEA has given to this important matter, and the constructive engagement that has allowed POM Pharma to recognize the best path forward. POM Pharma recognizes the importance of compliance with the statutory and regulatory requirements and restrictions applicable to controlled substances and believes the proposed approach will prevent diversion while permitting appropriate access for legitimate uses, with minimal burden on the agency.

POM Pharma believes DEA has the information necessary to review and approve the 2020 Woodfield Application and 2021 POM CO Application, but if you have questions or would benefit from additional information, please contact me at (202) 637-6419 or lynn.mehler@hoganlovells.com.

Sincerely,



Lynn Mehler
Partner

cc: Matthew R. Larson
Peace of Mind Pharmaceuticals, LLC

Exhibit 22
Proof of 2020 Application /
Letter to DEA dated 11/29/2021

PEACE OF MIND PHARMACEUTICALS LLC

3003 E. 3RD AVE, STE. B-109A
DENVER, CO 80206
303.825.0108
MATT@POMPHARMA.ORG

November 29, 2021

DEA Administrator Milgram
United States Drug Enforcement Administration
600 Army Navy Drive
Arlington, VA 22202

Dear DEA Administrator Milgram:

Congratulations on your confirmation as DEA Administrator this past summer.

The objective of Peace of Mind Pharmaceuticals LLC (POM Pharma) is to make appropriate pharmaceuticals for medical aid in dying (MAID) available on a non-profit basis. My own experience with brain cancer makes me acutely aware of the comfort access to MAID provides for patients with cancer and other life-threatening illnesses. Please see Attachment 1 for an overview of POM Pharma and MAID.

POM Pharma's objective involves the DEA because one of the most appropriate pharmaceuticals for MAID is Pentobarbital Sodium, a Schedule II controlled substance.

Two applications are pending with the DEA that would allow POM Pharma to achieve its objective by importing Pentobarbital Sodium. Please see Attachment 2 for a recent letter from POM Pharma's counsel, Hogan Lovells, to the DEA that summarizes the status of these two applications.

POM Pharma respectfully requests DEA action on these two applications.

Sincerely,

Matt Larson
Co-Founder

Exhibit 23
Proof of 2020 Application /
DEA Letter dated 12/21/2021

**U. S. Department of Justice**
Drug Enforcement Administration
8701 Morrissette Drive
Springfield, Virginia 22152

*www.dea.gov*

Mr. Matthew R. Larson
Peace of Mind Pharmaceuticals, LLC
3003 E. 3rd Avenue, Suite B-109A
Denver, Colorado 80206
Matt@POMPharma.org

Dear Mr. Larson:

This is in response to your letter to the Drug Enforcement Administration (DEA) Administrator Anne Milgram, dated November 29, 2021. In your letter, you requested action be taken on pending DEA importer registration applications, and upon a requested registration modification. Specifically, you mentioned two applications submitted for your organization, Peace of Mind Pharmaceuticals, LLC. (POM) in Boca Raton, Florida and Denver, Colorado, and a pending registration modification request for Woodfield Distribution, LLC. in Boca Raton, Florida. DEA appreciates the opportunity to address your inquiry.

The importer registration application for POM in Boca Raton, Florida (DEA control number W17123882J) was withdrawn on November 18, 2021. The application withdrawal was performed pursuant to the November 12, 2021 letter sent to the DEA West Palm Beach District Office Diversion Group, by Lynn Mehler of Hogan Lovells US, LLP., on your behalf, requesting said withdrawal.

DEA records indicate that Woodfield Distribution, LLC. in Florida (DEA registration number RW0413548) has neither submitted an application or request to add the drug code pentobarbital (drug code 2270) to their existing importer registration. As such, we are unable to provide information in reference to such application or request.

The importer application submitted by POM in March of 2021 (DEA control number W21024430J), seeks DEA authorization for POM to import pentobarbital sodium, a schedule II substance, to a facility in Denver, Colorado. This application is currently pending review.

I trust this letter adequately addresses your inquiry. For information regarding DEA's Diversion Control Division please visit www.DEAdiversion.usdoj.gov. If you have additional questions on this issue, please contact the Diversion Control Division, Regulatory Section via e-mail at DRG@dea.gov, or at (571) 362-8137.

Sincerely,

MATTHEW STRAIT Digitally signed by MATTHEW STRAIT Date: 2021.12.20 15:26:18 -05'00'

Matthew J. Strait
Deputy Assistant Administrator
Office of Diversion Control Regulatory
DEA Diversion Control Division

Exhibit 24
Proof of 2020 Application /
Email to DEA dated 12/21/2021

**Matt Larson**

| | |
|---|---|
| **From:** | Matt Larson <Matt@POMpharma.org> |
| **Sent:** | Tuesday, December 21, 2021 6:07 PM |
| **To:** | 'DRG'; 'matthew.j.strait@usdoj.gov' |
| **Cc:** | 'Mehler, Lynn W.' |
| **Subject:** | RE: DEA Response Letter |
| **Attachments:** | Woodfield Email 2020-06-09.pdf; Woodfield Email 2020-10-20 (DEA).pdf; Woodfield Email 2020-10-20 (Woodfield).pdf; Woodfield Email 2020-11-03.pdf; Woodfield Email 2021-01-08.pdf; Woodfield Email 2021-03-01.pdf |

Hi Mr. Strait,

Thank you for your letter – I greatly appreciate you taking the time and effort to respond to POM's recent letter to Administrator Milgram.

You state in the letter:

"*DEA records indicate that Woodfield Distribution, LLC in Florida (DEA registration number RW0413548) has neither submitted an application or request to add the drug code pentobarbital (drug code 2270) to their existing importer registration.*"

Unfortunately, this is incorrect.

Please find attached several emails that confirm that Woodfield did submit a request to have Pentobarbital added to its existing registration and there have been ongoing communications with the DEA regarding Woodfield's efforts to import Pentobarbital on behalf of POM:

- **Woodfield Email 2020-06-09**: Email from Woodfield to DEA with an Importer Questionnaire for Pentobarbital attached.

- **Woodfield Email 2020-10-20 (DEA)**: POM and DEA GS Eleazer correspondence regarding Woodfield's request.

- **Woodfield Email 2020-10-20 (Woodfield)**: POM and Woodfield correspondence; the DEA apparently told Woodfield that CIIs may not be imported and POM attempted to have Woodfield explain to the DEA that while the importation of a CII is not common, it is possible under the CSA.

- **Woodfield Email 2020-11-03**: Woodfield email authorizing POM to communicated directly with the DEA.

- **Woodfield Email 2021-01-08**: POM email to DEA Section Chief Barron requesting consideration that duplicate letters/inquiries to registered domestic manufacturers of Pentobarbital not be required by Woodfield.

- **Woodfield Email 2021-03-01**: Woodfield email to DEA with the duplicate letters sent to domestic manufacturers of Pentobarbital.

Please confirm receipt and also that no further support/documentation is required to correct this misunderstanding.

I hope you have a wonderful holiday season!

Matt

Matt Larson
P.O.M. Pharma
1.303.825.0108 (O)
1.303.808.6997 (C)
www.POMpharma.org

---

**From:** DRG <DRG@dea.gov>
**Sent:** Tuesday, December 21, 2021 2:27 PM
**To:** MATT@POMpharma.org
**Subject:** DEA Response Letter

Good Afternoon Mr. Matthew Larson,

This is in response to your letter to the Drug Enforcement Administration (DEA) Administrator Anne Milgram, dated November 29, 2021. Thank you.

Exhibit 25
Excessive Delay /
Excerpt from POM Pharma's 8/9/2021 Memo to DEA

Attachment 1

Graphic 8 – POM Pharma's 2017 Application Timeline



Exhibit 26
Excessive Delay /
2022 Importer Registrants

**2022 First-Time* Registered Importers**

| Registrant | FR Docket | Registrant in 2021? | Application Date (A) | App. Pub. in Fed. Reg. Date (B) | # of Days (A) to (B) | Notice of Reg. Date (C) | # of Days (B) to (C) |
|---|---|---|---|---|---|---|---|
| Royal Emerald Pharmaceuticals Research and Development DBA Royal Emerald Pharmaceuticals | 86 FR 17642 | No | 5/22/2020 | 4/5/2021 | 318 | 1/14/2022 | 284 |
| Cedarburg Pharmaceuticals | 86 FR 47521 | No | 1/20/2021 | 8/25/2021 | 217 | 1/11/2022 | 139 |
| National Center for Natural Products Research | 86 FR 30983 | No | 4/14/2021 | 6/10/2021 | 57 | 1/10/2022 | 214 |
| Cambridge Isotope Laboratories | 86 FR 51384 (DEA Typo: 15384) | No | 7/29/2021 | 9/15/2021 | 48 | 1/10/2022 | 117 |
| Indigenous Peyote Conservation Initiative | 87 FR 59198 | No | 7/30/2021 | 10/26/2021 | 88 | 9/29/2022 | 338 |
| Mycrodose Therapeutics | 86 FR 58691 | No | 9/17/2021 | 10/22/2021 | 35 | 1/6/2022 | 76 |
| Navinta LLC | 87 FR 4955 | No | 10/18/2021 | 1/31/2022 | 105 | 5/20/2022 | 109 |
| Nexus Pharmaceuticals, Inc. | 87 FR 1435 | No | 10/25/2021 | 1/11/2022 | 78 | 8/8/2022 | 209 |
| ANI Pharmaceuticals Inc. | 87 FR 12982 | No | 1/6/2022 | 3/8/2022 | 61 | 5/20/2022 | 73 |
| Curia New York Inc. | 87 FR 31910 | No | 2/23/2022 | 5/25/2022 | 91 | 7/27/2022 | 63 |
| Royal Emerald Pharmaceuticals Research and Development | 87 FR 25300 | No | 3/25/2022 | 4/28/2022 | 34 | 8/8/2022 | 102 |
| Wedgewood Village Pharmacy, LLC | 87 FR 53789 | No | 4/25/2022 | 9/1/2022 | 129 | 10/18/2022 | 47 |
| Akorn Operating Company, LLC DBA Akorn | 87 FR 45362 | No | 6/6/2022 | 7/28/2022 | 52 | 10/24/2022 | 88 |
| Biopharmaceutical Research Company LLC | 87 FR 45361 | No | 6/8/2022 | 7/28/2022 | 50 | 10/4/2022 | 68 |
| VA Cooperative Studies Program | 87 FR 48693 | No | 6/9/2022 | 8/10/2022 | 62 | 10/24/2022 | 75 |
| Cambridge Isotope Laboratories, Inc. | 87 FR 49888 | No | 7/18/2022 | 8/12/2022 | 25 | 10/24/2022 | 73 |
| Curia Wisconsin, Inc. | 87 FR 61366 | No | 8/11/2022 | 10/11/2022 | 61 | 11/28/2022 | 48 |
| National Center for Natural Products Research | 87 FR 62117 | No | 9/5/2022 | 10/13/2022 | 38 | 11/29/2022 | 47 |
| | | | | Average | 86 | Average | 121 |
| | | | | Median | 61 | Median | 82 |

** NOTE - for purposes of this analysis, 'first-time' registrants are those importer registrants that appeared on DEA's list of registered importers* in 2022, but not 2021; see https://www.deadiversion.usdoj.gov/drugreg/nor/importers/importers.html

Exhibit 27
Willful Disregard /
Excerpt from POM Pharma's 8/9/2021 Memo to DEA

<u>Graphic 1 – POM Pharma's Pentobarbital Sodium Being "*Brought Into*" the U.S.</u>




<u>Graphic 2 – POM Pharma's Pentobarbital Sodium NOT Being "*Sent Out Of*" the U.S.</u>




[continued on the following page]